ROSA LEGRAND, RESPONDENT, v. CENTRAL STATES LIFE INSURANCE COMPANY OF ST. LOUIS, MISSOURI, A CORPORATION, APPELLANT.— 132 S. W. (2d) 1105.

St. Louis Court of Appeals. Opinion filed Nov. 7, 1939.

Motion for rehearing overruled Nov. 21, 1939.

Writ of Certiorari denied Jan. 9, 1940.

*Jones, Hocker, Gladney & Grand* and *Vincent L. Boisaubin* for appellant.

*Dubinsky & Duggan* and *Claude O. Pearcy* for respondent.

BENNICK, C.—This is an action by plaintiff as the beneficiary under a policy of insurance which was issued by defendant upon the life of her husband. Upon a trial of the case to a jury, a verdict was returned in plaintiff's favor for the aggregate amount of $7,087.50, comprising items of $5000 as the face amount of the policy; $1,087.50 as interest from the date of the insured's death to the date of trial; and $1000 as an attorney's fee which was allowed by way of a finding of vexatious refusal to pay. Judgement was rendered in conformity with the verdict, and defendant's appeal to this court has followed in the usual course.

The policy, which was issued by defendant on September 24, 1921, was thereafter kept in force by the insured by the payment of the successive premiums called for by the policy until September 24, 1933, when the insured defaulted in the payment of the premium due on that date. It appears that there was a loan outstanding against the policy in the amount of $1490, and the broad question at issue between the parties is whether, at the time of the insured's default in the payment of premium, there was a sufficient reserve available

under the policy, after the deduction of the amount of such loan, to have purchased extended term insurance for the full face amount of the policy for a term extending beyond the date of the death of the insured, which occurred on August 3, 1934. It was conceded that following default the insured had failed to exercise his option to receive either nonparticipating paid-up insurance or the cash surrender value of the policy, with the result that under the terms of the policy the nonforfeiture provision for extended term insurance had automatically become operative as of the due date of the premium in default.

Plaintiff's theory is, in brief, that the reserve value of the policy on September 24, 1933, the date of default, was $1,728.95, and that after deducting from this the sum of $1490 as the amount of the loan outstanding against the policy, there was left the sum of $238.95 as a net reserve, which, if such sum was actually the amount of the net reserve, would have concededly purchase extended term insurance for the full face amount of the policy for a term extending well beyond the date of the death of the insured.

Defendant's theory, on the other hand, is that under the terms of the policy the cash surrender value at the time of default was only $1635, and that after deducting from this the sum of $1490 as the amount of the loan outstanding against the policy, there was left only the sum of $145 as the net reserve to be employed towards the purchase of extended term insurance, which sum, if it was actually the amount of the net reserve, would have concededly carried the policy forward only until April 22, 1934, which was more than three months short of the time of the death of the insured.

In other words, the whole controversy actually turns upon the question of whether, at the time of default, the reserve value of the policy was $1,728.95, as plaintiff claims, or only $1635, as defendant claims. If it was the former sum, then plaintiff is concededly entitled to recover, at least for the face amount of the policy with interest; but if it was the latter sum, then the policy had concededly become void and of no value long prior to the time of the death of the insured, which would necessarily mean that no case was made for submission to the jury and that the court should have peremptorily directed a verdict in favor of defendant.

Whether the one or the other of such figures is correct is manifestly to be determined by recourse to the policy itself as the instrument embodying the contract which was entered into between the insured and the company. In other words, upon the lapse of the policy defendant was in all events obligated to give back only so much of the reserve as was allowed by statute (Sec. 5741, R. S. Mo. 1929 (Mo. Stat. Ann., sec. 5741, p. 4388)), and if there was actually a greater amount available to the insured than the minimum required by statute, it was only so because such an amount was accorded to him by

virtue of the contract. [Davis v. Mutual Life Ins. Co. (Mo. App.), 119 S. W. (2d) 488.] Moreover we may note in passing that even if the policy were to be construed according to plaintiff's interpretation of its character, the amount of reserve allowed or guaranteed by statute would not only have been materially less than that allowed by the policy, but indeed would have been less than the amount of the indebtedness outstanding against the policy so as to have left no value whatever for the purchase of temporary or extended term insurance. It follows, therefore, that since the amount allotted by the policy, however it may be construed as to character, was in excess of the amount to which the insured would have been legally entitled under the statute, the parties were bound by whatever may have been the true provision of the policy, and it alone is consequently to be looked to in determining the amount of reserve which was available to the insured for the purchase of extended term insurance.

Aside from the policy itself, the material evidence in the case consisted of the testimony of six insurance actuaries, two of whom were put upon the stand by plaintiff, and four by defendant, and all of whom testified, without difference of opinion, that in determining the reserve available at a given time upon a policy of life insurance, the kind or character of the policy itself is a necessary and essential factor. In other words, it was an admitted fact that the amount of the reserve would vary in accordance with the character of the policy issued, and particularly so if any portion of the risk was covered by term insurance, since, for reasons which seem not to be disputed, there is no reserve at the end of the term of term insurance. Furthermore, the actuaries stated—which is no less true as a legal than as an actuarial principle—that in resolving the question of the kind or character of the policy it is essential that all its terms and conditions be examined and given effect, and that the question of the kind or character of the policy is not to be answered by recourse merely to its title or to any one clause or provision, which, if considered alone and apart from other relevant clauses or provisions, might warrant or support a construction contrary to that expressed by the policy in its entirety.

The portions of the policy to which the parties call particular attention in this case are the consideration clause and the nonforfeiture provisions, together with the accompanying table of values.

The consideration clause of the policy was as follows:

"This Insurance Is Granted in consideration of the application herefor, a copy of which is hereto attached and made a part of this contract, and of the payment in advance of Two Hundred Sixty-Nine 25/100 Dollars, being the premium for term insurance for the first policy year ending on the 24th day of September, 1922.

"This contract will be continued as an Ordinary Life Policy upon the payment of the annual renewal premium of Two Hundred Sixty-

Nine and 25/100 Dollars, on or before the 24th day of September, 1922, and of the payment thereafter of a like sum or on before the 24th day of September in every year during the continuance of this Policy.''

As regards the nonforfeiture provisions, the policy provided that after premiums had been paid on the policy for three full years, then in case of default in the payment of any premium or installment thereof on the date when due, the policyholder would, within sixty days from such due date, have his choice of the three usual options, that is, first, paid-up insurance, which would require a written application therefor; second, extended term insurance (operating automatically in the event of the exercise of no other option) for the face amount of the policy for the term which the cash surrender value at the date of default would purchase; and third, the cash surrender value, which, as in the case of paid-up insurance, required that application be made therefor.

In the course of the provision for such latter option and by way of a statement of what would constitute the cash surrender value of the policy and how the same would be determined, the policy provided as follows:

''Said cash surrender value at date of default will be the full reserve on this Policy, which is computed upon the American Experience Table of Mortality with interest at the rate of three and one-half per cent per annum, less a sum having a maximum at the end of the third policy year, not in excess of seven-tenths of one per cent of the face amount of this Policy, and thereafter decreasing, and less any indebtedness hereon or secured hereby. After the ninth policy year, said cash surrender value will be the full reserve, less any indebtedness as aforesaid.''

Then followed the table of values, which disclosed that after the policy had been in force for twelve full years (as was the case of the policy involved in this proceeding), its cash surrender value would be the sum of $1635, which is the figure counted upon by defendant as the reserve available under the policy at the time the insured defaulted in the payment of the premium falling due on September 24, 1933.

The whole matter of the correctness of the figure of $1635 as representing the full reserve available under the policy depends in the final analysis upon the question of whether the policy is to be considered as an ordinary life policy with a first year preliminary term feature, or as merely a net level premium ordinary life policy.

Defendant contends for the former, calling specific attention to the consideration clause of the policy, which provided that the insurance was granted in consideration, among other things, of the payment in advance of the sum of $269.25, ''being the premium for term insurance for the first policy year ending on the 24th day of

September, 1922.'' Assuming that the consideration clause of the policy is to be given the effect it purported to have as constituting the first year's insurance term insurance, then the reserve at the end of any given year was unquestionably to be figured as modified by the first year preliminary term feature of the policy; and since there is no reserve at the end of the term of term insurance, it follows that the first year would have to be discounted in computing the reserve available at the end of any subsequent year. Under this theory, the reserve on the policy would have begun with the second year of its existence, from whence on, according to the second paragraph of the consideration clause, the policy was to be ''continued as an ordinary life policy,'' and the reserve at the end of the twelfth year would have been $1635 as stated in the table of values.

Plaintiff contends, on the other hand, that regardless of the language of the consideration clause, the first year's insurance was not term insurance; that the whole policy was in truth and in fact a net level premium ordinary life policy; that as such, the reserve on the policy began to accumulate from the time of the payment of the first premium; that under this theory, the full reserve available at the end of the twelfth year was the sum of $1,728.95; and that as regards any conflict between the provision of the policy by which the term of extended insurance was to be determined and the corresponding provision of the accompanying table of values, the former was controlling over the table, which, in plaintiff's view of it, was merely a convenient mathematical calculation designed to give assurance to the insured that the values under his policy would be at least equal to those stated in the table.

While plaintiff argues for her contention with all the persuasiveness that the facts of the case permit, we nevertheless cannot escape the conclusion that the policy is necessarily to be construed as contended for by defendant.

Though plaintiff spends much time in her brief with her insistence that the designation of the first year's insurance as term insurance did not serve to make it so, it is enough merely to say that the controlling decisions of this state run counter to her contention. Not only did the evidence show that policies of the character of the one in suit are now quite generally issued in this state and elsewhere, but it also appears that such policies have heretofore come before the courts for construction, and that the uniform holding has been that where the consideration clause of the policy provides that the first annual premium shall be for term insurance for the first policy year, with the policy to be renewed or continued thereafter as an ordinary life policy upon the payment of the same premium, the first year of the policy is to be regarded as term insurance, just as the policy itself provides. [Prange v. International Life Ins. Co. of St. Louis, 329 Mo. 651, 46 S. W. (2d) 523; Tabler v. General American

Life Ins. Co., 342 Mo. 726, 117 S. W. (2d) 278; Hussey v. Ohio National Life Ins. Co. (Mo. App.), 119 S. W. (2d) 455.]

It must ever be borne in mind that this action is based upon the policy and not in repudiation of it, and that all its terms and conditions are to be read together and given their proper force and effect as integral parts of the contract. However this could not be done if we were to ignore either the first year preliminary term feature of the policy, or the table of values which was inserted for the very purpose of determining the rights of the insured in the event of the necessity of the exercise of either of the options provided by the nonforfeiture provisions. Not only was such table of values made a part of the contract between the insured and the company, but it embodied their agreement with respect to a matter upon which they were free to contract so long as the statutory requirements were satisfied by the amounts allowed. Nor was there any ambiguity between the different provisions of the policy. The provisions for extended insurance provided that such insurance should continue for the term which the cash surrender value would purchase at the date of default "as hereinafter provided," and in the table of values such cash surrender value at the end of the twelfth year was agreed upon as $1635. Moreover this figure was correct, under the method of computation of such value, if the first year preliminary term feature of the policy is given effect, as it must be, so as to require that the first year be excluded in computing the reserve value of the policy for any subsequent year.

No doubt the first year preliminary term feature of the policy was written into it for the express purpose of enabling defendant to charge off the cost of writing the insurance for the first year, and unquestionably the policy would have been more favorable to the insured if it had been drawn without this feature and as a net level premium ordinary life policy. For our part, however, we cannot disregard any one feature of the policy without making a new contract between the parties; and since the parties agreed, without ambiguity in their language, not only as to the character of policy that was to be written, but also as to the value that would be available for the purchase of extended term insurance in the event of lapse, we have no recourse but to give effect to the policy as it was written. [Horton v. Atlantic Life Ins. Co., 187 S. C. 155, 197 S. E. 512; Felderman v. Inter-Southern Life Ins. Co., 325 Pa. 389, 190 Atl. 723; Atlantic Life Ins. Co. v. Pharr (C. C. A. 6), 59 Fed. (2d) 1024.]

Since it appears that the reserve available under the policy at the date of the insured's default was insufficient, after the deduction of the indebtedness outstanding against the policy, to have purchased extended insurance for a term extending up to the date of the death of the insured, it follows that no case was made for submission to the jury, and that defendant's request for a peremptory instruction should have been sustained.

The judgment rendered by the circuit court should therefore be reversed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed. *Becker* and *McCullen, JJ.*, concur; *Hughes, P. J.*, not sitting because not a member of the court at the time of the submission of the case.