E. L. DOTY, ASSIGNEE OF ROSA C. BOSWELL (PLAINTIFF), RESPONDENT, v. AMERICAN NATIONAL INSURANCE COMPANY, A CORPORATION (DEFENDANT), APPELLANT.—160 S. W. (2d) 810.

St. Louis Court of Appeals. Opinion filed April 7, 1942.

*Kenneth I. Fligg* and *Fry & Edwards* for appellant.

*Messrs. Wayman & Kleinecke* of counsel.

*C. C. Franklin* for respondent.

BENNICK, C.—This is an action upon a policy of industrial insurance issued by defendant, American National Insurance Company, upon the life of one Dorothy O. Boswell, whose mother, Rosa C. Boswell, was designated as beneficiary. Plaintiff, E. L. Doty, brings the action as assignee of Rosa C. Boswell.

The policy, which was for the principal sum of $300, was issued on September 2, 1929, and provided for the payment of a weekly premium of ten cents. The insured, at the time, was to be ten years of age at her next birthday following the issuance of the policy.

There was a provision in the policy that the first year's insurance was term insurance; and a further provision that if the insured should die while the premiums on the policy were in arrears for a term not exceeding four weeks, the company would pay the benefits provided in the contract according to its conditions, but subject to the deduction of the premiums in arrears.

With respect to the benefits payable in the event of accidental death, the policy provided that upon receipt of due proof that the insured, after the attainment of age ten, and prior to the attainment of age seventy, had sustained bodily injury solely through external, violent, and accidental means occurring after the date of the policy and resulting in the death of the insured within ninety days from the date of such bodily injury, "while this policy is in force and while there is no default in the payment of premiums," the company would pay, in addition to any other sums due under the policy, and subject to its provisions, an accidental death benefit "equal to the face amount of the insurance stated in this policy," less the amount of any disability benefit which had become payaple on account of the same bodily injury.

The policy also contained the following "Whole Life-Free Policy" provision:

"At any time after premiums have been paid hereon for three full years, and while this Policy is in force, the Company will, upon written application to the Home Office upon blank furnished by the Company accompanied by this Policy and all Receipt Books, grant the Insured a Free Policy of life insurance, payable at the same time and under the same conditions as this Policy, but upon which no further payment of premiums shall be required, in accordance with the following table: . . ."

Then followed a table setting forth certain cash and paid-up values depending upon the attained age of the insured and the number of years that the policy had been continued in force, which values (so the policy recited) were based upon the American Experience Table of Mortality with interest at 3½ per cent per annum.

A still further provision accompanying the table was that at any time after premiums had been paid for ten full years, and while the policy was in force, the company, upon application by the insured and his surrender of the policy, would pay the insured, as a cash surrender value, an amount as indicated in the table.

Premiums were paid on the policy until March 18, 1935, or for a period of 5 years and 197 days; and the parties agree that the policy lapsed as of that date for the nonpayment of premium. It is further agreed that the policy did not, by its own terms, provide for extended insurance as a nonforfeiture benefit, and that in such situation the rights of the parties are governed by Section 5852, Revised Statutes of Missouri, 1939 (Mo. Stat. Ann., sec. 5741, p. 4388).

The insured died on November 8, 1937, as the immediate result of a bodily injury sustained solely through external, violent, and accidental means.

Thereafter a demand was made for the payment of the policy, which demand was refused by defendant upon the ground that at the time of the death of the insured the policy had lapsed for nonpayment of premium, and that the term of temporary or extended insurance provided by Section 5852 had meanwhile expired.

Upon defendant's denial of liability, this action followed in two counts, the first, for the principal sum of the policy, which, if due, was payable regardless of the cause of death; and the second, for the double indemnity benefit on account of the accidental death of the insured.

The case was tried to the court alone upon an agreed statement of facts, and resulted in a finding for plaintiff on both counts of his petition, with judgment entered in plaintiff's favor for the aggregate amount of $716. Defendant's appeal from such judgment has followed in the usual course.

It is to be borne in mind that this case involves the question, not only of plaintiff's right to recover the double indemnity which was provided for in the event of the insured's accidental death, but also his right to recover even the single indemnity or principal sum of the policy which was provided for in the mere event of the insured's death from any cause. The primary question is therefore the question of whether, in view of the conceded lapse of the policy for nonpayment of premium on March 18, 1935, the term of statutory temporary insurance (whatever its amount) extended up to the time of the death of the insured, which occurred on November 8, 1937. Plaintiff admits, incidentally, that if he is not entitled to recover the single indemnity or principal sum of the policy, he has no right to recover the double indemnity; but he contends that if he is entitled to recover the single indemnity, he is also entitled to recover the double indemnity. Defendant insists, on the other hand, that plaintiff is entitled to recover nothing because of the expiration of the term of extended insurance

prior to the time of the death of the insured; but that even though plaintiff were entitled to recover the single indemnity or principal sum of the policy (which defendant denies), he would still not be entitled to recover the double indemnity under the accidental death coverage, which, under defendant's theory of the case, terminated as of the date when the extended insurance began.

Section 5852 provides that no policy of life insurance issued by any life insurance company authorized to do business in this State shall, after payment upon it of three or more annual payments, be forfeited or become void by reason of the nonpayment of premiums thereon, but that instead the net value of the policy, when the premium becomes due and is unpaid, shall be computed upon the Actuaries' or Combined Experience Table of Mortality with 4 per cent interest, and that after deducting from three-fourths of such net value the unpaid portion of any notes given on account of past premium payments and any other indebtedness to the company secured by the policy, the balance shall then be taken as a net single premium for the purchase of temporary or extended insurance, the amount of which shall be such as is specified in the policy, but never less than the face amount insured by the policy reduced by the unpaid portion of the notes and indebtedness.

The section further provides that the term for which such temporary or extended insurance shall be in force shall be determined by the attained age of the insured at the time of default of premium, the assumption of mortality and interest aforesaid, the amount of temporary insurance granted, and the net single premium available for temporary or extended insurance as previously defined.

Bearing in mind the absence of any policy provision granting temporary or extended insurance upon the lapse of the policy for nonpayment of premium, and eliminating (for the time being at least) all questions of whether the accidental death coverage was included within the amount of statutory temporary insurance to be granted after lapse, we come to the question of whether plaintiff, in determining the amount of the net single premium available for the purchase of such temporary or extended insurance, may be permitted to compute the value of the policy upon the basis of the table of values incorporated in the policy as a part of the ''Whole Life-Free Policy'' provision (which values are based upon the American Experience Table of Mortality with interest at $3\frac{1}{2}$ per cent per annum), or of whether, on the contrary, he is to be restricted to the statutory method for calculating the net value of the policy and the amount of such net value available for the purchase of temporary or extended insurance. And along with this is the further question of whether, in the event the court should hold that all values must be computed strictly according to the statutory method of calculation, effect may be given to the provision of the policy declaring the first year's in-

surance to be term insurance so as to have decreased the net value or reserve of the policy at the time of lapse.

Reduced to figures, it appears that under the table of values incorporated in the "Whole Life Free-Policy" provision of the policy, the net value or reserve of the policy, at the time of lapse, would have provided for the purchase of a free policy in the sum of $23.23; that the amount of net value or reserve necessary for the purchase of a free policy for $23.23 at age fifteen, the insured's age at the time of lapse, would have been $6.16; and that the sum of $6.16, when used as a net single premium for the purchase of extended insurance, based upon the American Experience Table of Mortality at 3½ per cent per annum, would have continued such insurance until December 4, 1937, or 26 days beyond the date of the death of the insured.

Defendant admits the correctness of the actuarial calculations under this theory advanced by plaintiff as a basis for recovery, but denies that such theory is a proper method of valuation in a case such as this, where the policy itself is entirely silent upon the question of extended insurance, and all right to extended insurance springs solely from Section 5852.

It is of course true that Section 5852 is as much a part of every contract of life insurance issued in this State as though it had been expressly written into it; and it is also true that the section's requirements are only minimum requirements which the parties may exceed by special agreement between themselves with respect to the subject matter of the statute. In other words, the company, if it makes provision for extended insurance in its policy, may unquestionably grant privileges to the insured more favorable than the minimum requirements of the statute; and if it does so, then the insured, or the plaintiff in an action upon the policy, may claim the benefit of the more favorable provision, and this even to the point of permitting him to base his claim in part upon a more favorable policy provision, and in part upon a more favorable statutory requirement with which some less favorable policy provision may be in conflict and therefore invalid. [Gooch v. Metropolitan Life Ins. Co., 333 Mo. 191, 61 S. W. (2d) 704.]

In urging his position, plaintiff attempts to bring himself within such doctrine, and insists that in calculating the amount and term of extended insurance granted by Section 5852 (and by said section alone in view of the total absence of any provision in the policy with respect to extended insurance), he may be permitted to disregard the provisions of the statute prescribing the method by which the amount of the net single premium available for the purchase of extended insurance shall be ascertained, and to substitute in its stead the more favorable value contained in the table of values set forth in the policy itself in connection with, and as a part of, the "Whole Life-Free Policy" provision.

It seems to be conceded, incidentally, that the value which plaintiff takes from the policy table is more favorable to him than is the value determined according to the statutory method of calculation, if, in computing the net value of the policy under the statutory method, effect is given to the first year preliminary term feature of the policy, in which event the amount available as a net single premium for the purchase of extended insurance would be insufficient to have continued the insurance up to and including the date of death of the insured.

While it is true that in resolving a question having to do with the amount and term of extended insurance under the policy in suit, plaintiff, in case of a conflict between the statutory and the policy provisions, would be entitled to claim the benefit of whichever provision was more favorable to him, even to the point of basing his claim in part upon the statute and in part upon the policy, where he falls into error is in assuming that in this particular case there were any conflicting provisions so as to warrant the application of such doctrine.

As we have already pointed out, the policy contained no provision with respect to extended insurance, and in fact did not undertake to make any provision whatever with respect to the net value of the policy after default in the payment of premiums. On the contrary, the table set forth in the policy was one of values "while this policy is in force," and was to be resorted to only in the event that the insured, during the premium paying period, should have desired to cease further premium payments and make application either for a whole life-free policy, or else for the cash value of the policy, in either of which contingencies the table of values would have determined what he would have received for the reason that he and the company had so contracted.

In other words, the table of values set forth in the policy was in no sense put there for the purpose of determining the amount and term of the temporary or extended insurance to which the insured would be entitled upon default in the payment of premiums, but was only put there for the purpose of determining either the amount of a whole life-free policy for which he might have made application, or else the cash value he might have received upon surrender of the policy, provided either of such applications had been made after premiums had been paid for the requisite number of years and while the policy was still in force by virtue of the current payment of premiums. The values stated in the table were not values contracted to be available after default; they had no reference whatever to the values available for the purchase of extended insurance, as to which question the policy was entirely silent; and consequently there could be no conflict or repugnancy between such table of values and the statutory values, which are distinctly limited to extended insurance, which only becomes effective after default in the payment of premiums.

It is thus apparent that plaintiff's position disregards both the statute and its provisions and the policy and its provisions, and seeks to uphold a recovery upon a theory which is neither provided for by statute nor by private agreement of the parties themselves as embodied in their contract. In other words, he disregards the statute which says that the net value of the policy, for the purposes of extended insurance, shall be computed upon the Actuaries' or Combined Experience Table of Mortality with interest at 4 per cent; and he disregards the policy by attempting to make use of its table of values (computed upon the basis of the American Experience Table of Mortality with interest at 3½ per cent) for a purpose wholly different from that for which those values were expressly given. Had the policy provided that its table of values should be employed in determining the amount and term of extended insurance, then plaintiff would have been entitled to adopt such table as more favorable to him than the statutory method of calculation; but with the policy values only given for purposes other than the computation of extended insurance, there is no room in the case for the application of the doctrine which permits the plaintiff to pick and choose the more favorable provisions from among conflicting statutory and policy provisions.

We repeat that the policy itself made no provision for extended insurance or for any values to be used in connection therewith; and were it not for Section 5852, defendant would have been entitled, upon the lapse of the policy, to have appropriated to itself all the accumulated reserve which was otherwise available for the purchase of extended insurance. Section 5852 requires, however, that the net value of the policy shall be computed in a particular manner, and that the designated portion of such net value shall be taken for the purchase of extended insurance. [State ex rel. v. Allen, 343 Mo. 1191, 125 S. W. (2d) 854.] The term "net value," as used in the statute, means "value computed by net premiums according to the statutory table." [Magers v. Northwestern Mut. Life Ins. Co. (Mo.), 152 S. W. (2d) 148.] This construction eliminates the policy table unless such table had been contracted for as a more favorable table of values for computing extended insurance; and such table was therefore not a proper factor to be employed by plaintiff in determining the net value of the policy for the purposes of the instant case.

As opposed to this result, plaintiff relies upon the decision of this court in Finnigan v. American Nat. Ins. Co., 235 Mo. App. 332, 137 S. W. (2d) 698, which does indeed lend full support to his insistence that he is entitled to claim the benefit of the policy table of values in fixing the amount and term of extended insurance which was continued upon the insured's default in the payment of her premiums. It appears, however, that the Finnigan case was expressly ruled upon the assured authority of the Gooch case (Gooch v. Metropolitan Life

Ins. Co., *supra*), so that in the final analysis, the question of the effect of the Finnigan case becomes one of whether the Gooch case itself supports plaintiff's position.

It is to be observed that in the Gooch case (as distinguished from the case at bar), the policy itself contained a provision for extended insurance, and that accompanying the provision was a table showing values available for the purchase of extended insurance. The policy was for the face amount of $1000, and there was indebtedness against the policy in the sum of $224.57.

Whereas Section 5852 provides that the amount of extended insurance shall never be less than the face amount of the policy reduced ·by the indebtedness, the policy in the Gooch case provided that any indebtedness thereon would reduce the amount continued as term insurance in such proportion as the indebtedness bore to the cash value at the due date of the premium in default.

As for the question of the extent to which the indebtedness should reduce the amount continued as term insurance, the statutory provision was obviously far more favorable to the insured than was the policy provision. However, if the insured had claimed under the statute as a whole, he would not have been entitled to extended insurance in any amount for the reason that the indebtedness secured by the policy exceeded three-fourths of the net value of the policy at the time of default, and there would consequently have been no value to be taken as a net single premium for the purchase of extended insurance. On the other hand, under the policy provision for computing reserves, the insured had to his credit the sum of $29.65, which, if he had claimed under the policy as a whole, would have purchased extended insurance, but only for the sum of $118.26, representing the face amount of the policy reduced in the proportion that the indebtedness bore to the cash value.

In this dilemma, the Supreme Court held that the policy and the statute together made up the contract of insurance; that in the case of conflict between the respective provisions, whichever was the more favorable to the insured should prevail; and that upon such theory the plaintiff was entitled to use the reserve value afforded by the policy, and to apply it to the purchase of extended insurance in an amount as determined by the statute. Consequently, the plaintiff was permitted to apply the policy reserve of $29.65 to the purchase of extended insurance in an amount determined according to the statutory provision, that is, for the face amount of $1000 reduced by the indebtedness of $224.57; and the plaintiff's judgment for such an amount was affirmed by the court instead of relegating him to a recovery of only $118.26, which, as we have already pointed out, would have been the amount of the extended insurance if determined according to the policy provision in that regard.

Reduced to its simplest terms, what was held in the Gooch case was that where the policy itself provides for extended insurance, and any of its provisions in such regard are in conflict with the statutory provisions respecting extended insurance, the plaintiff may claim under whatever provisions are the more favorable to him, even to the point of basing his claim in part upon policy provisions and in part upon statutory provisions. This is is not to say, however, where the policy (as in the case at bar) is entirely silent upon the question of extended insurance, and the plaintiff's right to such insurance is derived solely from statutory provisions, that he may disregard any of such statutory provisions and substitute in their stead policy provisions which deal, not with the question of extended insurance, but with some entirely different matter, such as the right of the insured, before default, to apply for and receive a whole life-free policy upon which no further premiums shall be required. It is thus apparent that the Gooch case does not support the result in the Finnigan case; and our decision in the Finnigan case should therefore be no longer followed.

This brings us then to the further point of whether, disregarding the rule announced in the Finnigan case, and eliminating all question of recourse to the policy table of values for the purpose of determining the value available in the instant case, plaintiff is nevertheless entitled to recover under the provisions of the statute, that is, by computing the net value of the policy upon the Actuaries' or Combined Experience Table of Mortality with interest at 4 per cent, and then applying three-fourths of such net value to the purchase of extended insurance.

As we have already indicated, this question turns wholly upon whether effect is to be given to the first year preliminary term provision of the policy. If so, then (according to the agreed statement of facts) the policy, at the time of lapse, would have had a net value of only $6.25, three-fourths of which, or $4.69, would not have continued the insurance up to and including the date of death of the insured. But on the other hand, if such first year preliminary term provision of the policy is to be deemed ineffectual for the purpose of reducing the net value of the policy computed according to the statutory formula, then it is agreed that the policy, at the time of lapse, had a net value of $7.64, three-fourths of which, or $5.73, would have continued the insurance for a term extending well beyond the death of the insured.

We have already referred to the Magers case (Magers v. Northwestern Mut. Life Ins. Co., *supra*), which holds that the term "net value," as used in the nonforfeiture statute, is synonymous with "reserve," and means "value computed by net premiums according to the statutory table." It is also pointed out (by quotation from previous decisions) that the net premium is that portion of the gross

premium paid which purports to represent the cost of insurance protection for the period covered by the premium, and which, when the total cost of the entire insurance protection for the insured's whole life is ascertained and distributed in level or equal premium payments according to the mortality experience table used, will, in early years, exceed the actual cost of the protection, and in later years fall short of it, for the obvious reason that the risk in every càse increases with advancing years. The result is that in the early years of his coverage, the policyholder who contracts to pay in level or equal premium payments will pay into the company an excess over the actual cost of his insurance protection for such early years; and this excess constitutes the reserve or net value of his policy, which, upon default in the payment of any premium, is required by statute to be applied to the purchase of extended insurance.

It is well agreed that the net value afforded by the rule of statutory computation is the minimum value permitted, and that while the company may grant values more favorable to the insured than such minimum statutory values, any attempt on the part of the company to grant values less than the minimum statutory values will be void and ineffectual as in contravention of the terms and provisions of the statute. [Gooch v. Metropolitan Life Ins. Co., *supra*.]

Now in the case at bar, the record shows no more than that if effect is to be given to the first year preliminary term provision of the policy, the reserve would have been less at the date of lapse than if such value had been computed upon the basis of straight level premiums with a corresponding reserve available at the end of each premium paying period. Whether this means that under defendant's theory, there was no reserve whatever at the end of the first year, we do not know; nor is such question of any practical importance so long as we do know that giving effect to the first year preliminary term provision would have resulted in the accumulation of a less reserve than the minimum value determined according to the statutory formula.

It is true that in a case previously considered in this court (Legrand v. Central States Life Ins. Co., 235 Mo. App. 323, 132 S. W. (2d) 1105), we upheld the validity of a first year preliminary term provision in the policy for the reason that in that case, which also involved the amount of reserve available for the purchase of extended insurance, the plaintiff's action was based upon values contracted for in the policy itself, which values, while determined upon the basis of a first year preliminary term, were nevertheless more favorable to the insured than the values computed according to the statutory formula. In other words, where the plaintiff had elected to claim the benefit of values stated in the policy, she was not permitted to repudiate any one of the conditions of the policy by which such values had been determined; and even though this meant that

the reserve at the end of any given year was modified by virtue of the application of the first year preliminary term provision of the policy, the contracting parties' agreement in respect to policy values was held to be valid and effectual so long as the statutory requirements were satisfied by the amounts allowed.

So likewise was the holding in Bramble v. Kansas City Life Ins. Co., a decision of the Supreme Court which has not yet been published, where the court, in construing the policy, gave effect to its first year preliminary term provision, inasmuch as the values made available to the insured under the terms of the policy were in excess of the minimum requirements of the nonforfeiture statutes.

In this case, however, we are not presently concerned with the validity of the value contracted for in the body of the policy, but only with the question of the value available under the statute, which prohibits the forfeiture of a policy of life insurance after payment upon it of three or more annual payments, and prescribes the method by which its value shall be determined. The policy on its face was a whole life policy, and the payment of level or equal premium was required of the insured from the very inception of the policy. Under these circumstances, the arbitrary designation of the first year's coverage as preliminary term insurance did not serve to make it so; and since to give effect to such provision would reduce the net value of the policy to a figure below the minimum requirement of the statute, it necessarily follows that such first year preliminary term provision was ineffectual in that regard, and that upon the lapse of the policy there was a sufficient net value available for the purchase of extended insurance beyond the death of the insured.

This leaves only the question of whether the double death benefit for accidental death was required to be included within the amount of such extended insurance.

Section 5852 provides that the amount of extended insurance shall be "such as is specified in the policy, but never less than the face amount insured by the policy." In this case there was no amount of extended insurance specified in the policy, and therefore the amount to be extended by virtue of the statutory provision was only the face amount, which was the sum of $300 made payable in the event of the insured's death regardless of the cause of death.

That the accidental death benefit was not to be considered a part of the face amount was evidenced by the language of the policy providing that such benefit should be "equal to the face amount of insurance stated in this policy." In other words, the accidental death benefit was to be measured in terms of equality to the face amount, thus indicating the intention of the parties that the face amount should be one thing, and the accidental death benefit another thing, though equal in amount by reason of the fact that the contract so provided. Moreover, the company assumed liability for the payment of the accidental

death benefit only in the event that the insured met accidental death "while this policy is in force, and while there is no default in the payment of premiums," thus effectually excluding the accidental death coverage from the extended insurance to be granted, since extended insurance only comes into effect upon a default in the payment of premiums.

As we have already pointed out, the insured's death occurred during the term of extended insurance, and inasmuch as the amount of such extended insurance did not include the accidental death benefit, it follows that defendant's only liability to plaintiff is for payment of the single indemnity, which we have held was extended beyond the death of the insured by reason of the existence of a sufficient net value for that purpose when computed according to the statutory table.

At the submission of the case, the argument upon the question of plaintiff's right to recover the accidental death benefit was left to rest upon the argument in Wilkins v. Metropolitan Life Ins. Co., a case presenting the identical point, in which a decision was rendered by this court on March 3, 1942. There, as here, the chief question was one of whether we should adhere to our decision in Fletcher v. Metropolitan Life Ins. Co. (Mo. App.), 137 S. W. (2d) 621, and particularly of whether the Fletcher case had been in effect overruled by a subsequent decision of the Supreme Court in Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S. W. (2d) 474. Suffice it to say that in the Wilkins case, one judge fully concurred in the opinion holding that under the facts of that case, the accidental death benefit was not included in the amount of extended insurance; another judge concurred only in the result in a separate opinion; while a third judge dissented in a separate opinion, and requested that the cause be certified to the Supreme Court upon the ground that the majority result was in conflict with certain decisions of that court.

The facts with respect to the issue of defendant's liability being agreed upon, the result in the case is necessarily one of law.

Under the first count of the petition, plaintiff is entitled to recover the principal sum of $300 with interest from the date of death of the insured. Under the second count of the petition, he is entitled to recover nothing. The Commissioner accordingly recommends that the judgment of the circuit court be reversed and the cause remanded with directions to the circuit court to enter up a new judgment in accordance with this result.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, reversed and the cause remanded in accordance with the recommendations of the Commissioner. *Anderson, J.*, concurs; *Hughes,*

*P. J.*, concurs with respect to count one of the petition, and concurs in the result only with respect to count two. *McCullen, J.*, in a separate opinion, concurs in the result only with respect to count one of the petition, and dissents with respect to count two, and requests certification to the Supreme Court. The cause is, accordingly, certified to the Supreme Court.

SEPARATE OPINION OF McCULLEN, J., CONCURRING AS TO RESULT IN PART AND DISSENTING IN PART AND REQUESTING CERTIFICATION TO SUPREME COURT.

McCULLEN, J.—I find myself able to concur only in the result reached by our worthy Commissioner on the first count of the petition of plaintiff respondent herein, namely, that plaintiff is entitled to recover the principal sum of $300, with interest from the date of the death of the insured. Furthermore, I dissent from the Commissioner's holding on the second count that plaintiff is entitled to receive nothing under said count. I believe that the opinion of our Commissioner as to the second count herein construes into our nonforfeiture statutes a meaning and a purpose not expressed by the Legislature. As I read the opinion, it not only fails to construe the policy (as to the double indemnity) liberally in favor of the insured but, on the contrary, construes both the policy and our nonforfeiture statutes most favorably to the insurer, and in such respects is in conflict with the rule established long ago by our Supreme Court which has been steadily adhered to in many decisions.

In the light of the language and the history of our nonforfeiture statutes, Sections 5852, et seq., R. S. Mo. 1939, I am of the opinion that the Legislature had in mind one supreme purpose in the enactment thereof as well as in the subsequent amendments thereto, and that was to protect policyholders against forfeitures of their insurance by extending the period of insurance after a policyholder fails to pay premiums when due. The Legislature accomplished that purpose by requiring that a portion of the net value or accumulated reserve of the policy, which belongs to the policyholder and not to the insurance company (Westerman v. Supreme Lodge K. of P., 196 Mo. 670, 712, 94 S. W. 470), be used to keep the policy in force for such period of time as said value taken as a net single premium will purchase. The method of computing the net value is set forth in the statute. In accomplishing that purpose, the Legislature said nothing whatsoever about any distinction between "straight life insurance" and "insurance for accidental death" or "death by accidental means." Such a distinction results from an elaborate and involved "construction" of the statutes and is not warranted by the plain language used by the Legislature. By such construction, the opinion of our Commissioner herein, as I see it, changes our "nonforfeiture" statutes

into "forfeiture" statutes with respect to insurance for death by accidental means, whereas I think the supreme and deliberate purpose of the Legislature in enacting such laws was to avoid and defeat forfeitures.

In the case of Frances Britt Wilkins, Respondent, v. Metropolitan Life Ins. Co., a corporation, Appellant, Cause No. 25963 of the causes in this court, an opinion by our worthy Commissioner was filed on March 3, 1942, and when published will be found in 159 S. W. (2d) 354. That case involved the .same question that is involved in the second count of the case at bar. In said Wilkins case my duty impelled me to file a separate dissenting opinion and to request that said cause be certified to the Supreme Court because of what I considered to be conflict with the decisions of our Supreme Court set forth therein. In that case I gave at some length the reasons for my views and discussed the several cases which must be considered· in determining the question now before us. However, no useful purpose would be served by repeating here all that I said in the dissenting opinion in that case, because that case will, in the usual order, no doubt be decided by our Supreme Court before this case is decided. Hence, there is nothing to be gained by burdening this opinion with matter which will already have been before the Supreme Court by the time this case is reached for final determination.

I think, however, it will not be amiss to refer briefly herein to the case of Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S. W. (2d) 474. Our commissioner, in his opinion in the Wilkins case as well as in the case at bar, relies mainly upon the Cleaver case, supra, because of an expression used by the court in the Cleaver case in incidental discussion, where that court said that, "if" the automatic loan provision involved therein should be found to be invalid under the nonforfeiture statutes, then Cleaver's insurance became temporary term insurance, and that "the double liability agreement terminated when such extended insurance began."

As I see it, the above discussion of the hypothetical "if" situation was no part of the actual decision of the court in the Cleaver case because the court definitely found that such hypothetical situation did not exist. On the contrary, the court reached the opposite conclusion, namely, that the automatic loan provision involved therein was valid, and held that the whole policy, including the double indemnity agreement, remained in force, and that the insurance company was liable for the double indemnity for the accidental death. The Cleaver case was, therefore, not decided on our nonforfeiture statutes at all. It was clearly and unequivocally decided on the language of the policy involved in that case. The opinion therein did not discuss the nonforfeiture statutes in this connection.

For the reasons herein given as well as those set forth in the dissenting opinion in the Wilkins case, supra, and because I believe the

Commissioner's opinion in the case at bar is in conflict with State ex rel. Security Mutual Life Ins. Co. v. Allen et al., 305 Mo. 607, 613, 267 S. W. 379; Henderson v. Massachusetts Bonding & Ins. Co., 337 Mo. 1, 84 S. W. (2d) 922, and Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S. W. (2d) 474, I request that the case at bar also be certified to the Supreme Court so that said court may have an opportunity to render an authoritative decision on the question involved to guide us in the future.