E. L. DOTY, Assignee of ROSA C. BOSWELL, v. AMERICAN NATIONAL INSURANCE COMPANY, a Corporation, Appellant.—No. 38184.—165 S. W. (2d) 862.

Division One, November 10, 1942.

*Kenneth I. Fligg* and *Fry & Edwards* for appellant; *Wayman & Kleinecke* of counsel.

194

*C. C. Franklin* for respondent.

*Watson, Ess, Groner, Barnett & Whittaker* and *Douglas Stripp* *amici curiae.*

DOUGLAS, P. J.—This is an action on a policy of life insurance bearing a principal sum of $300 with weekly premiums of ten cents. The policy was issued by defendant on the life of Dorothy Boswell whose mother, Rosa Boswell, is beneficiary. The plaintiff is the latter's assignee.

Premiums were paid for more than five years until March 18, 1935, when the policy lapsed for nonpayment. The insured died on November 8, 1937, as the result of an accident. The policy is described

as whole life insurance and contains a provision that the first year's insurance is term insurance.

The petition is in two counts. The first is to recover the death benefit. The second count is to recover the extra indemnity provided in the policy because of the accidental death of insured. The case was tried to the court on an agreed statement of facts. Plaintiff recovered judgment on both counts and defendant appealed to the St. Louis Court of Appeals. That court affirmed the judgment on the first count but reversed the judgment on the second count. 160 S. W. (2d) 810. One of the judges dissented from the reversal of the judgment on the second count and the case was certified here.

We consider the case anew as though it came here by ordinary appellate process.

In view of the fact the policy lapsed, plaintiff's recovery must come through extended insurance. The policy contains no provision for extended insurance. Therefore, plaintiff must look to the statutory nonforfeiture benefits if he is to recover.

The nonforfeiture statute (Sec. 5852, R. S. 1939) provides that no life insurance policy after three or more annual payments have been made on it shall be forfeited for nonpayment of premiums. The net value of the policy shall be computed upon the actuaries' or combined experience table of mortality with four per cent interest per annum. Three-fourths of its net value shall be used as a single premium for temporary or extended insurance for the full amount of the policy.

However, plaintiff for his principal theory of recovery does not rely entirely on the statute but contends that the net value of the policy at the time of the lapse shall be computed by using the more favorable basis of computation employed in the policy table for a "free policy."

The policy contains the following "Whole Life—Free Policy" clause:

"(1) At any time after premiums have been paid hereon for three full years, and while this Policy is in force, the Company will, upon written application to the Home Office upon blank furnished by the Company accompanied by this Policy and all Receipt Books, grant the insured a Free Policy of life insurance, payable at the same time and under the same conditions as this Policy, but upon which no further payment of premiums shall be required, in accordance with the following table:"

Then follows a table setting forth certain paid up values according to the age of the insured and the number of years the policy has continued in force, based on the American Experience Table of Mortality with interest at $3\frac{1}{2}$ per cent per annum.

Using the policy table plaintiff finds that for the period the policy was in force a free policy in the sum of $23.23 is provided. He

calculates that the net value or reserve necessary to furnish a free policy of such an amount would be $6.16. Taking this figure as a net single premium, he determines the extended insurance and finds it would have reached beyond the death of the insured.

Defendant admits the correctness of plaintiff's actuarial calculations, but asserts that the policy figures may not be used to determine the amount of extended insurance. Its reason is that since the policy is silent as to extended insurance the statute supplies the sole basis for its calculation.

On this issue Commissioner Bennick, speaking for the St. Louis Court of Appeals appropriately said: "It is of course true that Section 5852 is as much a part of every contract of life insurance issued in this state as though it had been expressly written into it; and it is also true that the section's requirements are only minimum requirements which the parties may exceed by special agreement between themselves with respect to the subject matter of the statute. In other words, the company, if it makes provision for extended insurance in its policy, may unquestionably grant privileges to the insured more favorable than the minimum requirements of the statute; and if it does so, then the insured, or the plaintiff in an action upon the policy, may claim the benefit of the more favorable provision, and this even to the point of permitting him to base his claim in part upon a more favorable policy provision, and in part upon a more favorable statutory requirement with which some less favorable policy provision may be in conflict and therefore invalid. ▮▮▮ Gooch v. Metropolitan·Life Insurance Co., 333 Mo. 191, 61 S. W. (2d) 704.

"In urging his position, plaintiff attempts to bring himself within such doctrine, and insists that in calculating the amount and term of extended insurance granted by Section 5852 (and by said section alone in view of the total absence of any provision in the policy with respect to extended insurance), he may be permitted to disregard the provisions of the statute prescribing the method by which the amount of the net single premium available for the purchase of extended insurance shall be ascertained, and to substitute in its stead the more favorable value contained in the table of values set forth in the policy itself in connection with, and as a part of, the 'Whole Life—Free Policy' provision. . . .

"While it is true that in resolving a question having to do with the amount and term of extended insurance under the policy in suit, plaintiff, in case of a conflict between the statutory and the policy provisions, would be entitled to claim the benefit of whichever provision was more favorable to him, even to the point of basing his claim in part upon the statute and in part upon the policy, where he falls into error is in assuming that in this particular case there were any conflicting provisions so as to warrant the application of such doctrine."

There can be no conflict between the benefits in event of lapse granted by the statute and those granted by the policy because the policy grants no such benefits. The free or paid-up policy may be had only while the insurance remains in force. It is in no sense a nonforfeiture benefit. Accordingly, we rule that under these circumstances plaintiff is confined to the statute alone in computing the extended insurance.

This ruling is contrary to the decision in Finnigan v. American National Insurance Co., 235 Mo. App. 332, 137 S. W. (2d) 698, on which plaintiff relies for his use of the values set out in the policy table. In that case such was the only issue on identical policy provisions. The trial court in the instant case was bound by that case and followed it.

The Finnigan case was based on our decision in Gooch v. Metropolitan Life Insurance Co., 333 Mo. 191, 61 S. W. (2d) 704, supra. The Gooch case held that the nonforfeiture statute sets only the minimum basis for computing extended insurance in the event of a lapse, and if the policy provides a more favorable basis for such computation the latter may be used. If any of the several policy provisions relating to extended insurance are in conflict with any of the requirements of the statute, the statute prevails. The policy and the statute must be read together. A plaintiff may take the more favorable provisions from *both* the statute and the policy and combine them in computing the extended insurance. This holding was based on the principle that an insurance company is free to provide a basis for computation which is more favorable than the statutory one. But where, as in this case, the policy makes no provision whatever for extended insurance the statute furnishes the sole basis for its computation. Consequently a person may not employ the values from the policy table for a free policy, available only while the policy is in force, in the statutory computation of extended insurance after the policy is in default. The error in the Finnigan case was the assumption that the Gooch case permitted this to be done. The Finnigan case was incorrectly decided and is overruled.

Plaintiff's second ground of recovery turns on the question of the validity of the one year's "preliminary term insurance" since preliminary term insurance builds up no net value or reserve. A policy combining preliminary term with other insurance is ordinarily valued not from its beginning but from after the expiration of the term. Plaintiff ignores this fact and claims that when the reserve of the policy is computed according to the nonforfeiture statute, disregarding the term feature and giving the same reserve to the first year's insurance as is given to each of the other years while the policy was in force, the aggregate reserve would be sufficient to furnish extended insurance beyond the date of death. Excluding any reserve for the first year, as defendant insists must be done, the balance

is not sufficient to keep the extended insurance in force until the date of death. But plaintiff argues that designating the first year's insurance as term insurance, thereby excluding a reserve for the first year, is in conflict with the nonforfeiture statute because it reduces the reserve available for extended insurance below the minimum the statute prescribes. This leads us necessarily to an ▮▮▮ examination of the nonforfeiture statute, its purposes and requirements.

The purpose of the statute was to prevent the forfeiture of the policy reserve when the policy lapsed for nonpayment. We have held that the term "net value of the policy" in the nonforfeiture statute is the same as the "policy reserve." Magers v. Northwestern Life Ins. Co., 348 Mo. 96, 152 S. W. (2d) 148. The reserve arises in this way. Where premium payments are in equal amounts throughout the life of the policy the insured necessarily must pay more than the actual cost of the insurance during his younger years. This excess ordinarily constitutes the reserve which is held by the company to supplement the payments made during insured's older years when the premium payments are less than the actual cost of the insurance. When the policy lapses, the purpose for the reserve vanishes. Then the nonforfeiture statute steps in and says that the company may not appropriate the reserve but must use three-fourths of it for the benefit of the insured.

A clear exposition of the purpose and application of the statute is found in Westerman v. Supreme Lodge of K. of P., 196 Mo. 670, 94 S. W. 470, 5 L. R. A. (N. S.) 1114. "The simplest form of carrying on the business of life insurance would be for the company to charge the policy-holder each year with the sum which it costs to insure him for that year, which can be ascertained with reasonable certainty by the aid of accepted tables of mortality. In such case, the relation between the parties would be merely that of insurer and insured. But the general practice of insurers is, instead of charging such sums, which would increase from year to year, to ascertain what these sums would average each year throughout an average life, and to charge each year such average sum. The necessary effect of this practice is that the insured, during the earlier years of the running of his policy, pays more than it costs to insure him, and thus the company accumulates from year to year a fund [the reserve] which in equity is held for the benefit of the policy-holders. It is this feature . . . which gives existence to 'net values,' within the meaning of our statutes; that 'net value' of a policy being represented by a sum which, with compound interest at the rate of 4 per cent per annum and with the addition of future net premiums, will provide for the payment of the policy when it matures, according to the 'combined experience' or 'actuaries' table of mortality. . . . The fund thus accumulated is not regarded by our laws as the absolute property of the company, but is held by it as a quasi-trustee for the benefit of the

policy-holders, . . . . If the insured violates his contract and forfeits his policy, the company cannot treat the accumulation upon his policy as its property, but holds it for his benefit.'' The opinion continues that it was the intention of the legislature by the nonforfeiture statute to secure to the policy-holder the reserve which had accumulated on his policy and not permit such reserve to be forfeited or appropriated by the insurer.

Further, and of particular application here, we find the opinion, in discussing benefit certificates issued under the assessment plan, points out that the nonforfeiture statute could not apply to policies which have in fact no actual net value. This is a proper view of the statute and we adopt it.

We note that the opinion did not have the concurrence of a majority of the court. However, it has since been cited with approval in Magers v. Northwestern Life Ins. Co., 348 Mo. 96, 152 S. W. (2d) 148; and Cleaver v. Central States Life Ins. Co., 346 Mo. 548, 142 S. W. (2d) 474.

The nonforfeiture statute in no way requires a policy to create or carry a reserve, nor does it prescribe any limits for the reserve which a policy may carry. As stated in the Westerman case the nonforfeiture statute can not apply to a policy which has not in fact a reserve. The statute concerns itself with ''the net value of the policy.'' It is the nature of the insurance and the terms of the policy and not the statute that produce a net value or reserve. The statute is and of necessity must be a general one as it covers all types of reserve-bearing policies. Given the age, kind of insurance, that is ordinary life, limited pay, etc., amount of insurance, the length of time the policy has run, the mortality table which is merely the rate of mortality, and the rate of interest, the computation of the reserve accumulated on a particular policy is as invariable as determining a result from a multiplication table. The statute merely provides a basis for computing the reserve by designating the mortality table to be used—the actuaries' or combined experience table; and the rate ▓▓ of interest—four per cent. All other factors for computing the amount of reserve must come from the policy itself.

It is clear that the nonforfeiture statute in no way prevents the writing of preliminary term insurance.

The setting up of policy reserves is regulated by other statutes, not by the nonforfeiture statute. The purpose of such statutory regulation is to maintain solvency so that insurance policies can be paid as they become due. Sec. 5800 et seq., R. S. 1939.

A preliminary term insurance provision is recognized by these statutes. Section 5831 specifies that ''policies issued by companies doing business in this state may provide for not more than one year preliminary term insurance by incorporating in the provisions thereof, specifying the premium consideration to be received, a clause plainly

showing that the first year's insurance under such policies is term insurance, purchased by the whole or a part of the premium to be received during the first policy year and shall be valued accordingly." This provision was inserted in 1934 (Laws 1933-4, Ex. Sess., p. 74) which was after the policy was issued. But such insurance has been known and used for some time. We find in "The Principles and Practice of Life Insurance" by Willey, 1912 Edition, that "preliminary term insurance is that [form] used by a large number of companies as a means of providing for the heavy initial expense incurred in writing new life insurance business. Much expense is incurred in the first year in placing the business on the books of a life insurance company; and, by treating the first year of the policy as term insurance, a large portion of the premium is set free to meet this expense which seems to be one of the necessary features in the business of life insurance. Under such contracts the premium for the first year is generally the same as that for subsequent years." The St. Louis Court of Appeals in Legrand v. Central States Life Ins. Co., 235 Mo. App. 323, 132 S. W. (2d) 1105, considering a preliminary term policy said: "Not only did the evidence show that policies of the character of the one in suit are now quite generally issued in this state and elsewhere, but it also appears that such policies have heretofore come before the courts for construction, and that the uniform holding has been that where the consideration clause of the policy provides that the first annual premium shall be for term insurance for the first policy year, with the policy to be renewed or continued thereafter as an ordinary life policy upon the payment of the same premium, the first year of the policy is to be regarded as term insurance, just as the policy itself provides. Prange v. International Life Insurance Company of St. Louis, 329 Mo. 651, 46 S. W. (2d) 523, 80 A. L. R. 950; Tabler v. General American Life Insurance Co., 342 Mo. 726, 117 S. W. (2d) 278." And see: Vail v. Midland Life Insurance Co. (Mo. App.), 108 S. W. (2d) 147; Lacy v. American Central Life Ins. Co., 232 Mo. App. 1132, 115 S. W. (2d) 193; Bramble v. Kansas City Life Ins. Co., 349 Mo. 318, 160 S. W. (2d) 746.

Thus it appears that preliminary term insurance was written in this state with judicial approval, before the amendment of 1934. The Prange case, supra, was decided in 1931. We find no statute or legal principle which forbade or does now forbid the writing of preliminary term insurance. The decisions of other jurisdictions have held it is a matter about which parties are free to contract. Atlantic Life Ins. Co. v. Pharr, 59 Fed. (2d) 1024; Felderman v. Inter-Southern Life Ins. Co., 325 Pa. 389, 190 Atl. 723; Bankers' Life Ins. Co. v. Howland, 73 Vt. 1, 48 Atl. 435.

The conclusion follows that plaintiff's contention that the preliminary term provision should be disregarded and the reserve computed so as to include the first year must be ruled against him unless it

should be determined that in this particular policy the preliminary term provision is repugnant to other provisions more favorable to the assured. The general rule requires a construction favorable to the assured where repugnant provisions in a policy make the policy ambiguous.

██ The policy appears to be one of ordinary whole life insurance rather than a combination of term insurance and ordinary life insurance. We find on the back of the policy in large letters "Whole Life Policy." The insuring clause promises payment on proof of the death of the insured. The consideration clause requires equal or level payments during the continuance of the contract. These clauses provide whole life insurance only. We next come to the "Agreements and Conditions" of the policy. Under "Ninth" and in small letters we find the following: "No suit shall be brought against the Company after two years from the date of the death of the Insured. If any suit be commenced after two years, the lapse of time shall be conclusive evidence against any claim, the provisions of any and all statutes of limitations to the contrary notwithstanding. The first year's insurance under this Policy is Term Insurance." However, under "Privileges and Concessions" we find in a large letter title over the table of values: "Whole Life—Free Policy." There is nothing to indicate to the ordinary person that such table is not based on all the premiums paid as in a simple whole life policy with no preliminary term insurance. The free policy is available "at any time after premiums have been paid hereon for three full years."

It strongly appears to us that there is an inconsistency or repugnancy between the statement "the first year's insurance under this policy is term insurance" which is the only mention or reference in the policy to term insurance, and the other parts of the policy which would indicate the policy is an ordinary whole life policy without preliminary term insurance.

Whole life insurance is not consistent with term insurance. Webster (New International Dictionary, 2d Ed.) under life insurance, states: "Straight life insurance or whole life insurance [is insurance] for which premiums are collected so long as the insured may live; and term insurance [is insurance] which promises payment only within a stipulated number of years." Willey in his "Principles and Practice of Life Insurance" says: "If the consideration payable by the insured is an annual premium so long as he may live, it is called a continued payment policy or an ordinary whole life policy." In Appelman on Insurance, sec. 2, we find: "What is commonly termed 'ordinary' life insurance is the contract encountered in the great majority of cases. In lay parlance, that insurance is written upon the life of an individual for a fixed amount at a definite premium. A premium is paid upon it each year in the same amount during the entire lifetime of the insured." A contract of life insurance has been described

204

as "not an assurance for a single year with the privilege of renewal from year to year by paying the annual premium" but as "an entire contract of insurance for life, subject to discontinuance and forfeiture for nonpayment of any of the stipulated premiums." New York Life Ins. Co. v. Statham, 93 U. S. 24; Burnet v. Wells, 289 U. S. 670. Such a characteristic would exclude term insurance which automatically expires at the end of the term of years. 37 C. J., Life Ins., sec. 94. In view of the contrary nature of the two types, it seems only reasonable that a policy which combines preliminary term with whole life insurance should state such fact in clear and definite terms. See Shepherd v. Mutual Life Ins. Co., 63 Fed. (2d) 578.

██ In concluding as we do that the policy is ambiguous we have kept in mind the general rule that the entire policy must be considered in determining the intention of the parties and not detached provisions or clauses.

Furthermore, we are cognizant of the decisions which hold that an indorsement on an insurance policy designating its kind is no part of it. See Hill v. Travelers' Ins. Co., 146 Iowa, 133, 124 N. W. 898, 28 L. R. A. (N. S.) 742; Maryland Casualty Co. v. Massey, 38 Fed. (2d) 724, 71 A. L. R. 1428. But in Hessler v. Federal Casualty Co., 190. Ind. 68, 129 N. E. 325, 14 A. L. R. 1329, it was said in construing an accident policy "words printed on the back of the policy, purporting to sum up what is embraced by it, constitute a part of the contract, and are to be taken into consideration in its construction." Also from the Legrand case, supra, it would seem that the title may be considered along with relevant clauses and provisions of the policy. We think this is proper. "In resolving the question of the kind or character of the policy it is essential that all its terms and conditions be examined and given effect, and that the question of the kind and character of the policy is not to be answered by recourse merely to its title or to any one clause or provision, which, if considered alone and apart from other relevant clauses or provisions, might warrant or support a construction contrary to that expressed by the policy in its entirety." It is significant to note that in the Legrand case the policy provided in the consideration clause that the first premium was "for term insurance for the first policy year ending on the 24th day of September, 1922." Then there followed immediately: "This contract will be continued ██ as an Ordinary Life Policy upon payment, etc." That policy shows it was issued before the 1934 amendment so that its wording was not forced by that amendment. There can be no doubt but that was a policy which in clear language distinguished and combined the preliminary term and the whole life insurance. But we find no such clearly drawn distinctions in the policy in the instant case.

██ We believe that this is a case for the application of the rule that where a policy contains inconsistent provisions, the view should be adopted which will sustain rather than forfeit the contract.

Although the policy on its face appears to be ambiguous because of the conflicting parts we do not so rule because no such charge is· made or argued here. However, we will remand the case with leave to plaintiff to amend his petition if such be necessary, so that this theory may be fully presented to the trial court after which the trial court shall be free to exercise its independent judgment. We do this on the authority of the rule that where it appears from the record that a plaintiff has rights growing out of the transaction but· has misconceived his remedy an appellate court has jurisdiction to remand the cause to permit the petition to be amended and the cause retried. Jensen v. Wilson Township, 346 Mo. 1199, 145 S. W. (2d) 372, and cases cited therein.

We now come to the question whether the double indemnity provision for accidental death should be carried forth as a part of the extended insurance. The policy states that an accidental death benefit ''equal to the face amount stated in this policy'' will be paid ''while this policy is in force, and while there is no default in the payment of premiums.'' We considered this question under an almost identical policy provision in the case of Wilkins v. Metropolitan Life Ins. Co., 350 Mo. 185, 165 S. W. (2d) 858, decided concurrently with this case. We held that under such a policy provision the statute did not require the accidental death benefit to be carried forward as extended insurance but that such benefit terminated upon the lapse for nonpayment of premiums. We adhere to that ruling in this case.

The judgment is reversed and the cause remanded.

All concur except *Hays, J.*, absent.