ANNA TIMMERMAN, by Next Friend, LOUIS TIMMERMAN, Respondent, v. DANIEL FRANKEL, DANIEL LYONS and JULIUS LYONS, Co-partners Doing Business as FRANKEL, FRANK & COMPANY, Appellants.

Kansas City Court of Appeals, May 19, 1913.

1. NEGLIGENCE: Personal Injuries: Elevators. The plaintiff sued to recover damages for personal injuries sustained by the negligence of the defendants in operating its freight elevator. The plaintiff worked as an errand girl in one of the five departments of the defendants' wholesale millinery store and factory in Kansas City. The passenger electric elevator was out of repair, and the errand girls were instructed to use the freight elevator. The plaintiff put her head over the lattice work which was fifty inches high, to call the elevator, as there were no other signals for it. The elevator was descending at the time and it struck her on the head and she was injured. *Held*, that the defendants were guilty of negligence in allowing their minor employees to use the freight elevator without warning them of the dangers of improper use.

2. ———: ———: **Master and Servant: Reasonable Care.** A master, within the limits of reasonable care, has the right to conduct his business in his own way and is bound to exercise not the highest care but ordinary care to provide his servant with a reasonably safe place in which to work.

3. ———: ———: ———: **Breach of Duty.** The dangers of a particular work may be great and apparent to persons of capacity and knowledge on the subject and yet a person from youth and inexperience fails to appreciate them and it would be a breach of duty on the part of a master to expose an individual of this character to such dangers without instructions or cautions which will enable him to comprehend. them.

4. ———: ———: ———: **Capacity: Question for the Jury.** A party's capacity, not his age, is the criterion by which his responsibility and conduct should be measured; and whether or not a youth assumes the ordinary risks incident to his employment, or was guilty of negligence which contributed to his injury, where no instructions are given or the dangers of his employment pointed out to him by his employer, is almost always a question for the jury, and is always so where different inferences are fairly deducible from the evidence.

5. **PRACTICE, TRIAL: Motion to Discharge Jury.** Where a party to litigation is in a highly nervous and excitable condition, and she breaks down and weeps in the presence of the jury while on the witness stand, it is within the discretion of the trial judge to grant a motion to discharge the jury.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*McCune, Harding, Brown & Murphy* and *Blatchford Downing* for appellants.

(1) The evidence failed to show any negligence on the part of the defendants, therefore, the demurrer to plaintiff's evidence should have been sustained, and at the close of the case, defendants' instructions 6R, 1R, 2R, 3R and 5R should have been given. Kappes v. Shoe Co., 116 Mo. App. 154; Purcell v. Shoe Co., 187 Mo. 276; O'Brien v. Steel Co., 100 Mo. 182; Blundell v. Mfg. Co., 189 Mo. 552; Bradley v. Railroad, 138

Mo. 293; Brands v. St. Louis Car Co., 213 Mo. 698; Saversnick v. Schwarzschild & Sulzberger, 141 Mo. App. 509; Ries v. Transit Co., 179 Mo. 1. (2) Failure to equip the freight elevator with signal bells was not the proximate cause of plaintiff's injury. Kappes v. Shoe Co., 116 Mo. App. 154; O'Brien v. Steel Co., 100 Mo. 182; Glenn v. Street Railway, 150 S. W. 1095. (3) Plaintiff's injury was clearly the result of her own negligence, and therefore defendants' instruction 4R should have been given. Purcell v. Shoe Co., 187 Mo. 276; Ramsdell v. Jordan, 168 Mass. 505, 47 N. E. 244; Herdt v. Koenig, 137 Mo. App. 589; Ries v. Transit Co., 179 Mo. 1; Fronenthal v. Gas Light Co., 67 Mo. App. 1; Sparks v. Railroad, 31 Mo. App. 111. (4) The court erred in admitting over defendants objection testimony to the effect that the passenger elevator was equipped with call signal bells. Kappes v. Shoe Co., 116 Mo. App. 154; Purcell v. Shoe Co., 187 Mo. 276.

*Atwood & Hill, W. E. Pepperell* and *Chas. H. Thompson* for respondent.

(1) It is the duty of the master to furnish the servant with a reasonably safe means of transportation from one floor to another while in the course of the servant's employment, and must take into consideration the nature of the employment, the age, experience, and capacity of the servant. Vanseler v. Cigar & Paper Box Co., 108 Mo. App. 621, 84 S. W. 201; Saller v. Shoe Co., 130 Mo. App. 712, 109 S. W. 794; Daniels v. Johnson, 39 Colo. 185; Hutchinson v. Safety Gate Co., 152 S. W. 65; Bradley v. Railroad, 138 Mo. 302. (2) Plaintiff did not assume the risk of defendant's negligence in failure to properly equip and operate the elevator. Cole v. Transit Co., 183 Mo. 94; George v. Railroad, 225 Mo. 411. (3) When the master ordered and required the servant to use the freight

Timmerman v. Frankel, Frank & Co.

elevator for passenger purposes, it was equivalent to its construction for such use, and as to the master's duty to properly equip and safely operate such car, it must be regarded as a passenger elevator. A failure of the master to equip and operate the same in a manner reasonably safe for passenger purposes is negligence. McCaffrey v. Glue Co., 143 Mo. App. 24, 123 S. W. 945; Schlavick v. Friedman, 157 Mo. App. 83, 137 S. W. 82; Lumber Co. v. Johnson, 120 Ga. 1035, 48 S. E. 438; Lauter v. Duckworth, 19 Ind. App. 535, 48 N. E. 867; Daniels v. Johnson, 39 Colo. 185. (4) Plaintiff's age, knowledge of elevators, experience and capacity should be taken into consideration in determining whether or not she was guilty of contributory negligence. The general custom and possible means of signaling the elevator, and the instructions of the master are also elements to be considered. In view of all these elements, the determination of the question of plaintiff's negligence is for the jury. Saller v. Shoe Co., 130 Mo. App. 712, 109 S. W. 797; Bradley v. Railway Co., 138 Mo. 306; Longree v. Jackes-Evans Mfg. Co., 120 Mo. App. 478, 97 S. W. 278; Schultz v. Moon, 33 Mo. App. 340; Garaci v. Hill-Omeara Const. Co., 124 Mo. App. 709, 102 S. W. 597; Dunlap v. Chemical Works, 159 Mo. App. 49, 139 S. W. 828; Winkle v. Peck D. G. Co., 132 Mo. App. 656, 112 S. W. 1029; Daniels v. Johnson, 39 Colo. 185. (5) The failure of defendants to equip the freight elevator with signal bells was the proximate cause of plaintiff's injury. Buckner v. Horse & Mule Co., 221 Mo. 710, 120 S. W. 770; Werner v. Street Railway, 138 Mo. App. 1, 119 S. W. 1078.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries she received while in the employment of defendants and which she alleges were caused by negligence of her employers. The answer contains a general traverse and pleas of contributory

negligence, assumed risk and negligence of a fellow-servant. The cause is here on the appeal of defendants from a judgment of $1500 recovered by plaintiff in the circuit court.

At the time of her injury, October 9, 1911, plaintiff was sixteen years old and had been employed since February, 1910, as an errand girl in one of the five departments of defendants' wholesale millinery store and factory in Kansas City. She was rather undersized, somewhat aenemic, of retarded physical development and her counsel claim that in mentality she was a little below par, but we find no support for that claim in the record. She was a witness in her own behalf and was subjected to a searching cross-examination without betraying any lack of intelligence and the witnesses who spoke of the subject of her mental capacity seemed to regard it as normal. We regard her as a person of average intelligence but as being below normal in vitality and physical development.

Defendants occupied a six-story building and the department to which plaintiff was assigned was on the fifth floor. Her duties required her to go to all parts of the building for materials needed by the hat trimmers in that department and she had been told to get some material from a lower floor and have it ready for use at the close of the luncheon hour. She returned from lunch fifteen or twenty minutes before one o'clock and came to the fifth floor on the freight elevator which went on to the sixth floor. Finding she had more recess time than she had thought she decided to return to the street for a short walk and stop on her way back for the needed materials. Accordingly she went to the elevator door and thrust her head into the shaft to call for the elevator. The car was descending from the sixth floor and before she could call it struck her head and inflicted the injuries for which she seeks to recover damages.

There were two elevators in the building, one for passengers and the other for freight. The first was equipped with signal bells but the freight elevator was without such equipment and employees who used it were compelled to call into the shaft to signal the operator. The passenger elevator was temporarily out of service for repairs and the employees had been directed to use the freight elevator. There were stairways in the building but the errand girls (of whom there were ten or twelve in the store) had been ordered to use the elevators in running errands to keep them from loitering on the stairways. The shaft of the freight elevator was completely boxed in except at the doorways and the car was enclosed on three sides. There was a lattice gate fifty inches high at the doorway on the fifth floor and, of course, an open space between the top of the gate and the top of the doorway. Plaintiff thrust her head into this open space above the gate when she started to call. She did not know where the car was and did not look upward. Her head was caught between the gate and the floor of the car and she would have been killed had not the operator stopped the car instantly.

The facts and circumstances about which there is no dispute show conclusively that the car was moving very slowly and could not have been more than two or three feet above plaintiff when she placed her head within the path of its descent. Plaintiff claims that owing to the natural weakness of her voice she could not make the operator hear her signals unless she put her head into the shaft and further claims that the other employees were in the habit of calling in that manner owing to the difficulty of making themselves heard when calling into the shaft through the doorway. She denies that she had been warned against the practice by defendants.

The witness for defendants contradict plaintiff on many of the vital facts of the case. They state, in

substance, that it was not the custom of employees to place their heads in the shaft to call the operator, that he could easily be summoned by calling through the doorway and that plaintiff had been warned against the dangerous practice not only by placards posted in the shaft opposite to the doorways but by oral admonition from her superiors. Further they state that plaintiff was not intending to call the operator to bring the car to the floor for her use but mischievously stuck her head into the shaft.

Defendants contend that the court erred in not peremptorily directing a verdict in their favor. We find no evidence supporting the charge in the petition of negligence on the part of the operator of the car. Obviously the car which was being carefully handled was so close to plaintiff when she entered the path of danger that no degree of care or vigilance exercised by the operator could have prevented the injury. Instead of condemning his conduct plaintiff should feel grateful to him for saving her life. His act in stopping the car so quickly denotes the employment of the highest degree of care, intelligence and presence of mind.

And we agree with counsel for defendants that no inference of negligence may be drawn from the mere fact that the freight elevator was not provided with a signal appliance. Viewing the evidence in its light most favorable to plaintiff the relation obtaining between her and her employers at the time of her injury was that of servant and master and not that of passengers and common carrier. [Kappes v. Brown Shoe Co., 116 Mo. App. 154.] A master, within the limits of reasonable care, has the right to conduct his business in his own way and is bound to exercise not the highest care but ordinary care to provide his servant with a reasonably safe place in which to work. The uncontradicted evidence is that freight elevators in factories, whether or not they be used by employees

as vehicles of transportation, are not equipped with signal devices. It may be conceded for argument that common usage is not the final and most conclusive test of reasonable care but where, as here, the fact is indisputably proved that a given instrumentality has the sanction of general usage and there is no evidence to assail the custom itself as being negligent, we say a master could not be pronounced negligent for following the general usage without denying to him the right to conduct his own business in his own way and imposing on him, not the duty of exercising ordinary care towards his servant, but extraordinary care.

Since defendants cannot be successfully charged with negligence on account of the absence of a signal device we pass to the question of whether or not they were negligent in the method of work the evidence of plaintiff tends to show she was compelled to follow.

The master's right to conduct his business in his own way applies, of course, to methods of work. He may require his servant to follow such method as he may choose to select provided he restricts his choice to those which fall within the domain of reasonable care. But he has no right to enhance the natural risks of the business by compelling his servant to use proper instrumentalities in a negligent or unnecessarily dangerous manner nor in prescribing methods of work to minor servants that would be reasonably safe for adults to follow but would be fraught with unnecessary danger to immature persons from whom the degree of care and judgment presumed to characterize the conduct of the ordinarily careful adult could not be expected and should not be required.

It is well said by GOODE, J., in Vaneseler v. Box Co., 108 Mo. App. l. c. 629, that the dangers of a particular work may be great and apparent to persons of capacity and knowledge on the subject and yet a person, from youth and inexperience, fail to appreciate them and it would be a breach of duty on the

part of a master to expose an individual of this character to such dangers without instructions or cautions which will enable him to comprehend them.

Defendants had no reason to anticipate or guard against the contingency of an adult employee doing a thing so dangerous as to put his head into the elevator shaft. We agree with the opinion of the court in Ramsdell v. Jordan, 168 Mass. 505, 47 N. E. 244, that ''it is so plainly dangerous for a person to put his head in an elevator well for the purpose of shouting up the shaft for the car to come down that the verdict for defendant was rightly ordered.'' But it cannot be said that such act if performed by a minor sixteen years of age and of only ordinary intelligence would be negligence in law, especially in an instance such as that depicted in the evidence of plaintiff, where the minor had not been warned of the dangers attendant on such conduct and was merely following the example set before her by her elders. The characterization of plaintiff's conduct, we think, under these circumstances, presents an issue of fact and on the hypothesis that she was acting with the care to be expected of a person of her years, intelligence and experience, we must hold that defendants were bound to anticipate such conduct on the part of their minor employees and were guilty of negligence in ordering such employees to use the elevator without warning them of the dangers of improper uses. The jury were entitled to indulge the inference that the method of work prescribed by defendants for plaintiff to follow was not within the limits of reasonable care and, therefore, was one the defendant's rights of mastership did not authorize them to select.

In addition to what we have said in relation to the issue of contributory negligence we will add that we think the facts that the elevator could not have been over two or three feet above plaintiff when she put her head into its path of descent and that she failed to take

the precaution of looking upward do not alter our conclusion that she was not guilty of negligence in law.

In Saller v. Shoe Co., 130 Mo. App. 712, a youth of the age of plaintiff was injured and in speaking of the subject of contributory negligence the St. Louis Court of Appeals say: "As a youth grows in years and experience, he becomes more and more amenable to the rules of law in respect to the assumption of risk and contributory negligence applicable to adults, but there is no period of minority at which a court can say, as a matter of law, he, in this respect, stands on the same plane as an adult. His capacity, not his age is the criterion by which his responsibility and conduct should be measured; and whether or not a youth assumes the ordinary risks incident to his employment, or was guilty of negligence which contributed to his injury, where no instructions are given or the dangers of his employment pointed out to him by his employer, is almost always a question for the jury, and is always so where different inferences are fairly deducible from the evidence. [Anderson v. Railroad, 161 Mo. 411, 61 S. W. 874; Heinzle v. Railway, 182 Mo. 528, 81 S. W. 848; Anderson v. Railroad, 81 Mo. App. 116; Fry v. Transit Co., 111 Mo. App. l. c. 333, 85 S .W. 960; Edwards v. Railroad, 112 Mo. App. l. c. 659, 87 S. W. 587; Butler v. Railway, 117 Mo. App. 360, 93 S. W. 877.]"

Considering the proneness of children to act impulsively and heedlessly, it would be unjust to them and violative of natural law to hold them to the exercise of adult thoughtfulness and judgment, and should we pronounce plaintiff guilty in law of negligence because she failed to look upward, we would be applying to her conduct the same test that we would employ were we considering the same act performed by an adult. The issue of contributory negligence was prop-

erly sent to the jury and no error was committed in overruling the demurrer to the evidence.

On direct examination plaintiff testified that she suffered from headaches and nervous attacks since her injury to such an extent that she was unable to hold employment after obtaining it. Her attorney asked her, ''Well, have you attempted to work?''' She answered, ''Yes, sir, but I have been home every week. I come home one or two days and not long ago—a couple of weeks ago—I came home and my boss told me to stay home if I could not keep up my work and I lost my job.'' Plaintiff then began weeping and continued until counsel for defendants moved that the jury be discharged. Her counsel then said, ''Now, Anna, don't cry,'' and asked, ''What made you work at all if you felt so poorly?'' She answered, ''Well, we were poor.''

Counsel for defendants objected and her counsel said, ''Now, Anna, the judge tells me to say to you that you must just control yourself because it might result in the case not being gone through with, if you don't stop that or try hard to control yourself.'' Counsel for defendants said ''I don't think any case should be tried after an exhibition of that kind.'' ''At this point (so the record states) tears came into the eyes of the witness and she took out her handkerchief and held it before her eyes and bowed her head and remained silent for a short space of time.'' Counsel for defendants then asked ''that this jury be discharged because of the crying exhibition of the plaintiff on the witness stand and because I believe that her breakdown on the witness stand was highly prejudicial to the rights of the defendants.'' A spirited argument then ensued in which counsel for plaintiff contended that plaintiff's display of emotion was due to nervous derangement caused by the injury and that the jury were as much entitled to observe and note such results of negligence as they would be to have exhibited before

them physical maiming and disfigurement such as stumps of amputated limbs and maimed features.

The court overruled the motion to discharge the jury "for the reason that it. does not believe that the action of the plaintiff was such that it would unduly influence the jury in her favor and against the defendants and has instructed plaintiff's attorney to caution her that she must refrain from crying in the presence of the jury." Defendants excepted to this ruling and counsel for plaintiff resumed his interrogation of the witness and asked a question relating to her injuries which was objected to as leading. The court said, "Let her tell what is the matter with her." Counsel for plaintiff thereupon said, "I think I will omit this part of the matter; I am afraid she will cry again." Counsel for defendant renewed his motion for the discharge of the jury but it was overruled and defendants excepted. Evidently the trial judge believed these outbursts of plaintiff were due to her nervousness and were spontaneous. We realize that his opportunity for judging of the true cause of the emotional display was superior to that we possess and adopt his conclusion that plaintiff was not actuated by an interested motive. She had the right to testify in her own behalf and if her nervous condition was such that she could not control herself, we would hold that her uncontrollable and, therefore, innocent exhibition of nervousness was a fact the jury were entitled to have before them as one of the relevant and material facts of the case. If her face had been disfigured, or if she had lost an arm, no one would contend that it would have been improper for her to appear as a witness and exhibit such injuries to the jury. Or, if she had become an epileptic in consequence of the injury, the fact that the disease attacked her while at the trial would have been no ground for discharging the jury. To have given ground for such judicial action plaintiff or her counsel must have been guilty of improper con-

duct, i. e., must have done something from an interested and improper motive designed to prejudice the jury in her favor. We exonerate her from the imputation of being guided by such purpose and we think her counsel kept within the limits of propriety. His argument in opposition to the motion to discharge the jury was pertinent and necessary to combat the opposing argument in which it was suggested that plaintiff was acting in bad faith and that for her to have a nervous breakdown in the presence of the jury, of itself, was sufficient ground for sustaining a motion to discharge. We think the final remark of counsel for plaintiff that he would refrain from provoking his client to further tears was gratuitous and improper but we do not perceive how it could have given further emphasis to the fact, already brought to the notice of the jury, that she was highly excitable and nervous.

Point is made of an excessive verdict but if the evidence of plaintiff was worthy of belief, and it was for the jury to pass on that issue, the damages assessed would be very moderate compensation for the injuries her evidence shows she sustained.

There is no prejudicial error in the record and the judgment is affirmed. All concur.