Esther MILLER, Appellant,

v.

F. W. WOOLWORTH COMPANY, a Corporation, and Richard M. Bates, Respondents.

No. 46031.

Supreme Court of Missouri,

En Banc.

Nov. 9, 1959.

Thomas, Busse, Weiss, Cullen & Godfrey, James E. Godfrey, St. Louis, for appellant.

Hocker, Goodwin & MacGreevy, John M. Goodwin, St. Louis, for respondents.

LEEDY, Judge.

We adopt with some modification portions of the divisional opinion in this case, which opinion recites that it similarly adopted portons of an earlier one prepared in, but rejected by, the division (I). Quotation marks are omitted.

The action is one for damages for personal injuries sustained by plaintiff, an employee of defendant F. W. Woolworth Company, on account of the alleged negligence of said defendant company and its manager, defendant Richard M. Bates, in failing to provide plaintiff a reasonably safe place in which to work. Verdict and judgment were for plaintiff for $12,500, but the court sustained the separate after-trial motions of the defendants for judgment in accordance with their prior motions for a directed verdict. The alternative motions for a new trial were over-ruled. Plaintiff has appealed from the final judgment entered in favor of defendants.

While the plaintiff's petition purported to state a claim for relief based upon the alleged negligence of defendants in failing to furnish plaintiff with a reasonably safe place in which to work, the petition further charged that, " * * * defendants, wholly neglecting and disregarding their duty in that behalf, did furnish her with an unsafe place to work in that the counter over which plaintiff had to work was so high from the floor and so wide that plaintiff was compelled to unreasonably stretch and extend herself in performing her duties * * *," resulting in the injuries complained of; and that " * * * defendants assured her that said place was entirely safe and that she could work there with safety and without risk of personal injury or harm, and ordered her to continue her said work * * *."

Plaintiff's evidence tended to show that plaintiff, a saleslady forty-six years old, became an employee at defendants' store on Olive Street in St. Louis in 1949. She was assigned the duties of a "salesgirl behind the counter" at the greeting card counter in the store. It was her duty to wait on customers and to keep the counter filled. At that time, the greeting card counter was flat on top, like a table, with glass partitions separating the various classes of cards on display. There were openings or aisles at both ends of the counter permitting a salesgirl to move in and out to and from the aisle back of the counter.

In the spring of 1950, a rack with tiers of glass sections for the display of cards was installed on the top of the counter. The rack was so constructed as to slant or slope up from the front of the counter toward the back, enabling customers, who passed along the aisle in front, to "see the cards better." The height of the rack varied from counter level at the front to four feet three inches high (above the floor) at the back. The counter was some

fifteen feet in length and approximately three feet in width. There was one opening through the card rack on the top of the counter. The opening was occupied by a cash register, which was set with its back or high portion to the front of the counter, and it faced back so that sales could be registered from behind the counter. The top portion of the cash register was higher than the top of the card rack and the register effectively occupied the opening through the card rack. Plaintiff was about five feet two inches in height—five feet three, or five feet three and one-half inches in shoes. Plaintiff testified that when the installation was altered in 1950, defendant-manager advised her that she would be "built a platform in the back to raise you up also."

In making sales when standing behind the counter—"Well, usually the customer would ask me (plaintiff) where the sympathy cards were, this, that or the other, and I would point out and show them where they were and then they would pick several up and choose from them and hand them to me and ask me how much they were and give me the money and I would reach for the card, reach for the money, put it in a bag and hand it back, and the change." Plaintiff was not expressly directed to stand behind the counter in waiting on the customers; and she could and occasionally did makes sales at the ends of the counter; but when "'I was so busy I couldn't run around, I had to stay in back * * *'"; moreover, the cash register was set in the rear of the counter and, normally, the salesgirl stood behind the counter. Plaintiff's immediate superior testified that "the proper way to do" was to stand behind the counter all of the time and to wait on customers from behind the counter, and "the register is back there." She said that plaintiff "had to stand behind that counter."

In making a sale from behind the counter, the salesgirl raised her shoulder and extended her right arm "about halfway" across the counter, a foot and a half over the counter. Plaintiff usually rested the underside of her upper arm on the top of the display rack with palm of the hand turned upwardly. She sometimes used her left arm. There were "anyhow two hundred" sales consummated in the course of the day, or thirty to eighty dollars worth of five and ten cent cards. The time consumed in consummating a sale probably was a few seconds. (Plaintiff testified that she guessed she rested her arm on the top of the counter for two seconds in making a sale.)

Four or five months after the counter was altered, plaintiff felt strain and pain when reaching over the counter. She informed her immediate supervisor of the difficulty. (The supervisor, who was the same height as plaintiff, had frequently relieved plaintiff during the lunch hour and had sold cards at the counter. She "could feel strain reaching over the counter.") The supervisor in turn, two or three times, informed defendant-manager that plaintiff was having "difficulty back at that counter" and suggested that a little platform be built "back there that would raise us up [so] we wouldn't have so much trouble reaching over the counter," but the manager said "he didn't think we needed it." The manager also told plaintiff, "I don't think you will need a platform."

Plaintiff continued in defendants' employ until March 27, 1953, but prior to that time her right arm had begun getting sorer and sorer, her fingers numb, and then the numbness affected her neck and shoulder. She consulted and was treated by physicians who testified she was suffering from "traumatic neuritis," or neuropathy, a degeneration of the nerves caused by trauma, or by "a constant doing the same thing over a period of time," resulting in inflammation of the nerves and the degeneration mentioned. They were of the opinion such condition was due to the continual trauma experienced in the strain of the awkward movement of the arm and shoulder in her occupation as a saleslady reaching over the counter in defendants' store. The condition of her arm has been getting worse

rather than better since leaving the store, and the condition appears to be permanent. Use of the arm causes pain.

There was no evidence tending to show that the counter as altered was in itself inherently dangerous, and it was not plaintiff's theory and it is not now contended that any specific defect was shown in the construction of the installation or in the materials used in the construction thereof such as one would suppose would constitute a hazard of injury. There was no showing that the card display rack and counter, considered apart from their setting, were materially different in design or construction from the counters with display racks generally installed in stores.

Plaintiff's principal instruction in submitting her case submitted a finding as follows: " * * * if you find from the evidence:

"(1) That plaintiff became an employee of defendant, F. W. Woolworth Company on the 18th day of April, 1948 and worked continuously for said defendant as a saleslady in said defendant's store mentioned in the evidence from said date until the 26th day of March 1953; and

"(2) That during said time Richard M. Bates was the manager of said store and had authority from the said F. W. Woolworth Company to direct, instruct and supervise the work and working conditions of the employees therein, and in particular of said plaintiff; and

"(3) That plaintiff was put to work under such circumstances that she was required, in the performance of the duties imposed upon her by her said employment, to reach repeatedly over and across the sloping top of a three-foot-wide counter, the rear of which was 51 inches above the floor, and in so doing to stretch her right arm and shoulder, thus and thereby causing injury thereto; and

"(4) That said defendants knew, or in the exercise of ordinary care, should have known that said condition existed and was not reasonably safe and was likely to cause plaintiff to sustain injury by reason of the repeated stretching of her arm and shoulder, and that said defendants were informed and advised that said situation existed; and

"(5) That the said defendants failed to exercise ordinary care and prudence to remedy said condition and to furnish plaintiff a safe place in which to work, and that in so failing said defendants were negligent; and

"(6) That as a direct and proximate result of such negligence plaintiff was caused to sustain injury, and that at all times herein mentioned plaintiff exercised ordinary care for her own safety, then if you find such facts to be true, you are instructed that plaintiff is entitled to recover from defendants and your verdict should be in favor of plaintiff."

Appellant assigns error on the action of the court in sustaining the after-trial motions of the defendants and entering the judgment for defendants. Appellant insists that, on a favorable view of all the evidence and the reasonable favorable inferences arising therefrom, the plaintiff made a submissible case for the jury. She also says that the defendants owed her a nondelegable duty to furnish her a reasonably safe place in which to work; that she was not guilty of contributory negligence as a matter of law; that her claim was not covered by the Workmen's Compensation Law, Section 287.010 et seq. RSMo 1949, V.A.M.S., or the occupational disease sections thereof; and that assumption of risk is no defense in the instant case, since an employee never assumes the risk of the employer's negligence. Appellant cites numerous cases where the duty of the employer to furnish the employee with a reasonably safe place to work was considered and ruled. She relies particularly on McDaniel v. Kerr, 364 Mo. 1, 258 S.W.2d 629; Williamson v. Union Electric Light & Power Co., 281 Mo. 544, 219 S.W. 902; Row v.

Cape Girardeau Foundry Co., Mo.App., 141 S.W.2d 113, and other cases.

The divisional opinion held that the evidence clearly showed that plaintiff's injuries did not result from any failure of the defendants to furnish a reasonably safe place to work, thus rendering the cases last cited and the safe place to work doctrine inapplicable to the facts here in judgment, and with this holding we are in complete accord. The divisional opinion then proceeded on the premise that the factual situation developed by evidence which came in without objection brought the trial within the purview of RSMo 1949, § 509.500, V.A.M.S., (Trial of issues not raised by the pleadings—failure to amend pleadings to conform to evidence not to affect result of trial of those issues), and examined the law with reference to such factual situation, and held plaintiff had made a submissible case based upon a violation of defendants' common-law duty to exercise ordinary care with reference to the method adopted and employed for the transaction of defendants' business. We do not pause to determine whether this, as contended in respondents' supplemental brief en banc, amounts to permitting appellant's cause to be determined here on a theory different from that on which it was tried in the circuit court. For present purposes, the propriety of adjudicating the case on the negligent work method theory will be assumed, so we continue with the divisional opinion's discussion of the principles applicable thereto:

■ "It is the duty of the master not only to exercise ordinary care to furnish the servant a reasonably safe place to work and reasonably safe appliances with which to perform the work, but to likewise exercise ordinary care with respect to the means and methods employed in performing the work, with reference to the danger to be reasonably anticipated. It is the duty of the master to see that the servant is not subjected to hazards and risks which, as an ordinarily prudent person, he must know may be avoided by the exercise of reason-able precautions on his part. It is true that the master is not an insurer of the servant's safety, and, within the limits of reasonable care, is at liberty to conduct his business in his own way, nor is he bound to furnish the best or safest appliances or instrumentalities, or adopt the best and safest methods for doing the work, but it is his duty to exercise ordinary care to see that those furnished or adopted are reasonably safe. * * * The duty which the law casts upon the master is to use all reasonable precautions which ordinary prudence would dictate, under the circumstances, to avoid subjecting the servant to risk of injury." Wilborn v. Desloge Consolidated Lead Co., Mo.App., 268 S.W. 655, 657.

■ As to the duty to select safe methods of work, see Williams v. Terminal R. Ass'n of St. Louis, 339 Mo. 594, 98 S.W. 2d 651, 655–656; Kelso v. W. A. Ross Const. Co., 337 Mo. 202, 85 S.W.2d 527, 535; Schaum v. Southwestern Bell Telephone Co., 336 Mo. 228, 78 S.W.2d 439, 445; Sustar v. Bambrick Bros. Const. Co., 179 Mo.App. 495, 513, 162 S.W. 730; 56 C.J.S. Master and Servant § 260, p. 1013. Further, "the test of a master's liability is not whether or not there is a better or less dangerous way, but whether or not the method employed was reasonably safe, and whether or not the master was negligent in ordering and directing the plaintiff to perform the work in the manner in which he was ordered and directed to perform it." Welty v. S. H. Kress & Co., 221 Mo.App. 1089, 295 S.W. 501, 503; Luff v. Independence Foundry Co., Mo.App., 204 S.W. 596; Orth v. General Const. Co., Mo.App., 272 S.W. 1076, 1078. The master's duty in the respects mentioned cannot be delegated so as to relieve the employer of liability for negligence with reference thereto. English v. Roberts, Johnson & Rand Shoe Co., 145 Mo.App. 439, 451, 122 S.W. 747; 56 C.J.S. Master and Servant § 266, p. 1031. So much for the divisional opinion.

Plaintiff's work was of the very simplest character imaginable—that of a sales clerk

selling greeting cards at retail. As stated, there was no showing that the card display rack or counter were materially different in design or construction from counters with display racks generally installed in stores, and this is graphically illustrated by the photograph of the counter and rack in question as located in the portion of the store in which plaintiff worked.

■ That a master is not required to adopt any particular method of conducting his business, but is required to adopt usual and customary methods employed by ordinarily prudent persons in like work under similar circumstances, is illustrated by such cases as Schaum v. Southwestern Bell Telephone Co., supra, and the cases cited therein, which we regard as controlling under the facts of this case.

In Schaum, the court said (336 Mo. loc. cit. 235 and 78 S.W.2d loc. cit. 442): "Likewise, the duty to provide safe methods of doing the work in which employees are engaged does not require the best methods or protective devices which might be devised, but only reasonably safe methods. The test is what is found to be reasonably safe by usage and is commonly and ordinarily used in other similar places, occupations, and businesses.' Pevesdorf v. Union Electric Light & Power Co., 333 Mo. 1155, 64 S.W. 2d 939, 948, and cases cited; Knott v. Missouri Boiler & Sheet Iron Works, 299 Mo. 613, 253 S.W. 749, and cases cited; Williams v. St. Joseph Artesian Ice & Cold Storage Co., Mo.Sup., 214 S.W. 385; Spindler v. American Express Co., Mo.Sup., 232 S.W. 690; Coin v. John H. Talge Lounge Co., 222 Mo. 488, 121 S.W. 1, 5, 25 L.R.A.,N.S., 1179, 17 Ann.Cas. 888; see also, O'Brien & Co. v. Shelton's Adm'r, 246 Ky. 537, 55 S.W.2d 352; see discussion of authorities in note 68 A.L.R. 1417."

The court then cited approvingly the following from Coin v. John H. Talge Lounge Co., 222 Mo. 488, 506, 121 S.W. 1, 5, 25 L.R.A.,N.S., 1179, 17 Ann.Cas. 888: " 'In regard to the style of the implement or nature of the mode of performance of any

work, "reasonably safe" means safe according to the usages and habits and ordinary risks of the business. Absolute safety is unattainable, and employers are not insurers. They are liable for consequences not of danger, but of negligence, and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by the law to a higher degree of skill than a fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and, however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way commonly adopted by those in the same business is a negligent way for which liability shall be imposed.' "

In Schaum, as here, liability turned on the question of whether defendant had failed to provide a reasonably safe method of work, the proof there having also eliminated from consideration the charge of failure to furnish a reasonably safe place of work and that unsafe instrumentalities had been furnished. There the telephone company's employee had sustained an eye injury while removing the brick sides of a manhole, and the crucial question was whether the protection of goggles was required in order to make safe the work in which plaintiff was engaged. The court said: "Did the standard of care of ordinarily reasonable and prudent persons place upon his employer the affirmative duty of furnishing such a protective device for such work? How could respondent prove that it did except by showing that the ordinary usage of other employers was to provide goggles in that kind of work? *There is no evidence in this record on that subject.* * * * The charge is that ordering respondent to work in the manhole without providing him goggles was negligence. That could only be negligence if it violated the standard of ordinary care. It could only violate the standard of ordinary care if the usage of average reason-

able and prudent employers, in doing the same kind of work under similar circumstances, was to provide goggles, unless it was work so inherently dangerous that injury would be reasonably anticipated as the result of working without them. * * * Saying that there is no legal duty to provide goggles means that it is reasonably safe to conduct the work without them; or in other words, safe according to the usages and habits of average reasonable and prudent employers, because there is neither evidence that they use them in such work under similar circumstances, nor that the work was so inherently dangerous that we can say, without evidence of such usage, that injury would be reasonably anticipated as a result of working without them. Upon respondent's showing, we must say that he has failed to show that the telephone company carried on the work of enlarging the manhole in a manner which was not reasonably safe merely because it did not provide him with goggles." (Italics supplied.)

The case of Cool v. Curtis-Wright, Inc., 362 Pa. 60, 66 A.2d 287, 289, is somewhat analogous to this case both on the facts and the law. There a workman sued to recover damages for an impairment of hearing allegedly resulting from the failure of defendant to reduce and minimize metallic noises incident to its business of manufacturing airplane propellers. The statute under which the action was brought required that all industrial establishments be "so constructed equipped, arranged, operated, and conducted as to provide reasonable and adequate protection for the life, limb, health, safety, and morals of all persons employed therein." 43 P.S. § 25–2. The statute was held to be merely declaratory of the common-law duty to furnish a reasonably safe place to work. In holding that minimizing of noise to safeguard the hearing of employees was not required under the facts of that case, and in denying recovery, the Supreme Court of Pennsylvania, applying the same principles announced in the foregoing Missouri cases, said: " 'Absolute safety is unattainable, and

employers are not insurers. They are liable for the consequences, not of danger but of negligence, and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed.' [Titus v. [Bradford, B. & K.] Railroad Company, 136 Pa. 618, 626, 20 A. 517, 518, 20 Am.St.Rep. 944.] * * * Here it is not averred that any of the specific acts of alleged negligence constitutes a departure from ordinary usage in the business in which appellee was engaged. No case has been cited by appellant arising either in this jurisdiction or elsewhere as authority for extending the range of the common law doctrine to include a duty to minimize noise, and an independent exhaustive research has disclosed no such case. This absence of precedent is significant in determining the scope of the common law rule and confirms the conclusion that the common law standard can not with propriety be so extended. To hold otherwise would amount to judicial legislation out of harmony with the practical considerations that always heretofore have been held to govern in this class of cases."

■ These considerations are applicable and controlling in the case at bar, there being no proof whatever that the work method adopted by defendants in reference to plaintiff's employment was any other or different than the ordinary usage of other employers with respect to sales personnel engaged in like or similar work; nor was plaintiff's work of an inherently dangerous nature, and hence not bringing the case within the doctrine that in such cases injury would be reasonably anticipated as a

result of such work. Moreover, as pointed out in the dissenting opinion in division, if defendants had had two employees whose duties were to sell cards, one unusually short in stature and the other unusually tall, the defendants would not be required to have two card counters, one designed for the employee of short stature and the other for the one that happened to be tall. The dissenting opinion, with which we agree, concludes, "Such a requirement would be unreasonable and would impose an undue burden on industry."

The judgment is affirmed.

HYDE, WESTHUES, EAGER and STORCKMAN, JJ., concur.

DALTON, J., dissents in separate opinion filed.

HOLLINGSWORTH, C. J., dissents and concurs in separate dissenting opinion of DALTON, J.

DALTON, Judge (dissenting).

It is with regret that we find it necessary to dissent from the majority opinion in this case. We agree that the judgment must be reversed because the evidence clearly shows that plaintiff's injuries did not result from any failure of the defendants to furnish to plaintiff a reasonably safe place in which to work. We also agree with respondents' contention that plaintiff's Instruction No. I is prejudicially erroneous. However, we think the facts in evidence were sufficient to make out a submissible case based upon a violation of defendants' common-law duty to exercise ordinary care with reference to the method adopted and employed for the transaction of defendants' business, all as hereinafter more fully set out. We think the cause should be remanded so that, in the event the plaintiff is so advised, she may properly plead, try and submit her case upon negligent failure to adopt a reasonably safe method of work or upon some other theory, as hereinafter mentioned. It is apparent that the record shows a misadventure on the part of plaintiff's counsel in acting in part upon a mistaken legal theory. No question of intentional legal strategy is involved. See Blaser v. Coleman, 358 Mo. 157, 213 S.W.2d 420, 423; McClanahan v. St. Louis Public Service Co., 363 Mo. 500, 251 S.W.2d 704; McGaugh v. City of Fulton, 356 Mo. 1122, 205 S.W.2d 547, 552; Cantrell v. City of Caruthersville, 359 Mo. 282, 221 S.W.2d 471, 480; O'Neal v. Mavrakos Candy Co., 364 Mo. 467, 263 S.W.2d 430, 432 and the cases discussed in Smith v. St. Louis Public Service Co., 364 Mo. 104, 259 S.W.2d 692. We dissent from the conclusions reached in the principal opinion to the effect that the record fails to show that plaintiff, in the event of a reversal and remand, could not reasonably expect to make out a submissible case of negligent failure to adopt a reasonably safe method for the transaction of defendants' business. While we agree with the statement in the majority opinion to the effect that "there was no showing that the card display rack and counter, considered apart from their setting, were materially different in design or construction from the counters with display racks generally installed in stores", we disagree with the assumption that the defendants in this case adopted or employed the usual and customary method employed by an ordinarily prudent person in like work under similar circumstances. No such evidence appears in the record. The only evidence we find on that issue is directly to the contrary. Plaintiff's witness Audrey I. Staat testified, as follows: "Q. Have you ever seen any of these counters similar to this in Famous-Barr? A. They have them in the middle of the floor. You can walk around all sides of them, you can't get behind them and wait on them." If similar display counters are located in the center of the floor or against the walls of the place of business no such method as that adopted by the defendants is or could be employed.

The allegations of plaintiff's petition, the evidence offered and the submission by Instruction No. I (see paragraphs 3 and 4 of the Instruction) clearly demonstrate that plaintiff pleaded, tried and submitted her case in part on the theory of negligence in adopting an unsafe method of work, but she designated it and erroneously submitted it and confused it with negligence in failing to provide her with a reasonably safe place in which to work, while her evidence wholly failed to show any negligence in the latter respect.

The evidence shows that defendants employed plaintiff as a saleslady at its greeting card counter and that the counter was constructed as stated in the majority opinion. Plaintiff was five feet and, two inches in height and she was placed behind a counter which was four feet three inches high. With full knowledge of these facts the defendants adopted a method of work which required her to wait on trade from behind this counter so that, in making sales, receiving money and giving change, she had to reach over the top of the counter. The defendants required her to continue with said work in accordance with said method after the defendants knew that the method of work which they had adopted required her to unduly stretch and extend herself in performing her duties and knew that the method was causing strain and pain to plaintiff in the discharge of her duties. After the defendants knew that the method of work adopted by them was causing injury they assured her that she didn't need a platform, and in effect that she could work there and use the method adopted with safety and without risk of personal harm.

The authorities cited in the majority opinion sufficiently show that under the law of this state an employer is required to adopt a reasonably safe method of work for the protection of his employees. It is true that, as stated in the opinion, there is no proof that the method adopted by defendants with reference to plaintiff's employment was different from the ordinary usage of other employees with respect to person's engaged in like or similar work. However, where the evidence shows that the method adopted and used was dangerous and unsafe and was in fact causing injury and damage to plaintiff, it was unnecessary for plaintiff to show that the method adopted was different from ordinary usage, or that such "injury would be reasonably anticipated as a result of such work." If the method adopted and used by defendants was that of ordinary usage, the employer could have made proof thereof in defense of the action.

From the evidence presented a jury could with propriety find that the method established and maintained by defendants for the sale of its merchandise requiring, as it did, that plaintiff stand behind this counter and card rack and reach over the rack in waiting on customers in the making of sales was a dangerous and unsafe method; and that it exposed plaintiff to an unreasonable risk of harm. It further appears from the evidence that there were perfectly safe methods of handling sales from in front of the rack or over a low counter. An inference can be drawn that the defendant manager well knew that the method adopted would impose an unreasonable risk of harm to plaintiff in reaching over such a high rack. There was evidence that he had said that a platform would be built back of the counter to raise plaintiff up and so compensate for the increase in the height of the rack.

Liability cannot be imposed upon the defendants merely because they chose to employ one method of carrying on their business rather than another, unless the method selected was not reasonably safe. In this case we cannot say, as a matter of law, that the method adopted and put into effect for plaintiff in the discharge of her duties was a reasonably safe method. And it is not essential to plaintiff's recovery that it appear that defendants could reasonably have anticipated that plaintiff would be injured in the precise manner in which she was injured. It is sufficient if it appears, from all the facts and circumstances in evidence,

that defendant, in the exercise of ordinary care and prudence, ought to have foreseen that some injury was likely to result to plaintiff by reason of the method thus adopted for doing the work. On the evidence presented we think that reasonable minds may differ in determining whether the defendants were guilty of negligence in requiring the plaintiff to perform her work in the manner shown. Timmerman v. Frankel, 172 Mo.App. 174, 181, 157 S.W. 1051. The record indicates that plaintiff might well make out a submissible case of such negligence in the event of a remand.

Further, it is not clear that the facts in this case have been fully developed, nor that plaintiff (under the facts appearing in this record) could not recover on some other theory of negligence. We cannot say that plaintiff, in the event the cause is reversed and remanded, might not properly plead and submit her cause upon negligence in ordering and directing plaintiff to perform work which the defendants knew or by the exercise of care should have known that plaintiff could not safely perform. It is clear that the defendants were fully advised as to the height of plaintiff with relation to the height of the counter at the time she was directed to work behind the counter and carry on the work according to the method prescribed. Further, her physical stature and physical condition were known to defendants and they knew the physical effect resulting to plaintiff from the method of work adopted and ordered by defendants. In the case of Hamilton v. Standard Oil Co. of Indiana, 323 Mo. 531, 19 S.W.2d 679, it was held that an employee's petition stated a cause of action against his employer and foreman for injuries (latent tuberculosis to become active) sustained by the employee when driving rivets with a heavy hammer, as directed by the employer. In that case the petition alleged that the defendants had full knowledge of plaintiff's physical condition and capacity to do physical work and that the injuries were occasioned by defendants' negligence in directing plaintiff to perform such work. And see Brown v. Scullin Steel Co., 364 Mo. 225, 260 S.W. 2d 513, 518, where the Hamilton case was distinguished upon its facts from the Brown case. In the Hamilton case the court said: "Therefore, if the defendants in this case had knowledge, either actual or constructive, of plaintiff's physical condition and of his capacity to do physical labor, and knew or should have known that plaintiff could not reasonably and safely do the work which they ordered him to do, and that he would likely be seriously injured if he attempted it, they were guilty of negligence in ordering him to do the work, regardless of their knowledge of what plaintiff knew or did not know. The petition alleges these facts, and we hold it states a cause of action." 19 S.W.2d 679, 683, 684.

On a favorable view of the evidence presented by plaintiff in the trial of her case we think that in a properly pleaded and submitted case a jury could reasonably find that the manager's direction to plaintiff as shown in evidence was tantamount to an order to continue her work (using the method adopted by defendant) irrespective of its effect on plaintiff and on pain of loss of her employment in the event she refused to so proceed. Further, we think that the facts would present a jury question as to whether defendants were negligent in ordering plaintiff to work at the place and using the method adopted when they knew or should have known that such procedure would cause injury and damage to plaintiff.

In remanding a case for new trial with leave to amend, this court in Doty v. American National Ins. Co., 350 Mo. 192, 165 S.W.2d 862, 870, 143 A.L.R. 1062, said: "We do this on the authority of the rule that where it appears from the record that a plaintiff has rights growing out of the transaction but has misconceived his remedy an appellate court has jurisdiction to remand the cause to permit the petition to be amended and the cause retried."

We would reverse the judgment and remand the cause with directions to the trial court to set the judgment aside and to grant the defendants-respondents a new trial on the ground of error in the giving of Instruction I, so that the plaintiff, if so advised, may amend her pleadings and properly plead, try and submit her cause upon some more appropriate ground of negligence than negligence in failing to provide a reasonably safe place to work.

HOLLINGSWORTH, C. J., concurs in dissenting opinion of DALTON, J.